STATE v. PERRY

[159 N.C. App. 30 (2003)]

STATE OF NORTH CAROLINA v. LAURENCE PERRY

No. COA02-1356

(Filed 15 July 2003)

### 1. Criminal Law— venue—concurrent—joinable offenses

The trial court did not err in an involuntary manslaughter and practicing medicine without a license case by denying defendant's motion to dismiss based on improper venue, because: (1) N.C.G.S. § 15A-132(b) provides that when acts constituting the offense occur in multiple counties, each county has concurrent venue; (2) N.C.G.S. § 15A-132(b) also provides that if charged offenses which may be joined in a single criminal pleading under N.C.G.S. § 15A-926 occurred in more than one county, each county has concurrent venue as to all charged offenses; and (3) the offenses in this case are joinable offenses under N.C.G.S. § 15A-926(a).

### 2. Appeal and Error— preservation of issues—failure to object to later admission of same evidence

Although defendant contends the trial court erred in an involuntary manslaughter and practicing medicine without a license case by admitting into evidence a note from defendant naturopath's employee to the child victim's mother, this assignment of error is overruled because defendant failed to preserve this issue for appeal by failing to object to the later admission of the same evidence.

### 3. Evidence— refusal of questioning concerning business license—failure to prove prejudice

Even if it is presumed that the trial court erred in an involuntary manslaughter and practicing medicine without a license case by refusing to allow defendant naturopath to question a police lieutenant about whether the State would issue a license to an illegal business, this assignment of error is overruled because defendant failed to prove prejudice in light of other similar admitted evidence.

### 4. Evidence— medical records—failure to object

The trial court did not err in an involuntary manslaughter and practicing medicine without a license case by allowing a detective to testify that there were numerous phone consultations in defendant naturopath's progress notes that were included in the

child victim's medical records, because: (1) the medical records were admitted into evidence and published to the jury without objection; and (2) defendant failed to preserve the objection or to show that there is a reasonable possibility that a different result would have been reached absent any alleged error.

### 5. Evidence— prior acts—treatment of another patient

The trial court did not err in an involuntary manslaughter and practicing medicine without a license case by admitting evidence regarding defendant naturopath's treatment of another patient, because: (1) N.C.G.S. § 8C-1, Rule 404(b) allows for the admission of evidence of prior acts to show defendant's plan, motive, intent, knowledge, and absence of mistake; (2) defendant's treatment of the other patient was similar to the evidence the State presented of defendant's treatment and actions with regard to the child victim in this case; and (3) defendant failed to show that there was a reasonable possibility that a different result would have been reached absent the alleged error.

### 6. Evidence— physical location of universities—relevancy

The trial court did not abuse its discretion in an involuntary manslaughter and practicing medicine without a license case by admitting evidence regarding the physical locations of the addresses of the universities listed on defendant's diplomas and resume, because the State was attempting to show that defendant naturopath was holding himself out as a medical doctor.

### 7. Appeal and Error— preservation of issues—failure to preserve issue on grounds asserted

Although defendant contends the trial court erred in an involuntary manslaughter and practicing medicine without a license case by refusing to admit character evidence of defendant naturopath's habit and character for being a law-abiding citizen and not holding himself out as a physician, this assignment of error is overruled because defendant failed to properly preserve the issue for appellate review on the grounds asserted.

### 8. Criminal Law— motion for mistrial—failure to move to strike or request curative instruction

The trial court did not err in an involuntary manslaughter and practicing medicine without a license case by denying defendant naturopath's motion for a mistrial based on a detective's testimony regarding his familiarity with a signature based on a law

enforcement investigation, because: (1) defendant failed to move to strike or request a curative instruction; (2) defendant waited until seven other witnesses had testified and until the next morning before making his motion based on the detective's statement which was objected to and sustained; and (3) defendant failed to show that the trial court abused its discretion by denying the motion.

**9. Homicide; Physicians and Surgeons— involuntary manslaughter—practicing medicine without a license—sufficiency of evidence**

The trial court did not err by denying defendant naturopath's motion to dismiss the charges of involuntary manslaughter and practicing medicine without a license, because the State presented sufficient evidence of the elements of both charges.

**10. Criminal Law— prosecutor's argument—medical records—note**

The trial court did not abuse its discretion in an involuntary manslaughter and practicing medicine without a license case by overruling defendant naturopath's objections to the State's closing argument regarding the reading from the child victim's medical records from another doctor and the notes from an officer, because: (1) the defense referenced the medical records during its closing arguments; (2) the contents of the medical records and the existence of the medical records from the other doctor were in evidence; and (3) everything the State referenced to in closing regarding the notes from an officer was in evidence through the testimony of the officer.

Appeal by defendant from judgment entered 15 April 2002 by Judge James L. Baker in Buncombe County Superior Court. Heard in the Court of Appeals 11 June 2003.

*Attorney General Roy Cooper, by Special Deputy Attorney General Francis W. Crawley, for the State.*

*James N. Freeman, Jr. for defendant.*

TYSON, Judge.

Laurence Perry ("defendant") appeals from his convictions of and sentence for involuntary manslaughter and practicing medicine without a license. We find no error.

STATE v. PERRY

[159 N.C. App. 30 (2003)]

## I. Background

In March of 1997, Helena Rose Kolitwenzew ("Rose") was six years old and was diagnosed with Type I Juvenile Diabetes. Rose's mother, Marion Kolitwenzew ("Marion"), was informed that her daughter would be insulin dependent for the rest of her life. Marion tried many methods of alternative medicine for her daughter including blue shark embryo injections in Mexico and acupuncture. On several prior occasions, Rose had to be taken to a medical facility to be treated for low blood sugar when her mother either did not administer her insulin or reduced her insulin level. Rose was being treated by Simon Becker who believed "that what Rosie had was a virus, that it was acting viral." During all of her alternative medicine treatments, Marion continued to take her daughter to a medical doctor.

In September 1999, Becker referred Marion and Rose to defendant, a naturopath. Defendant lived and worked in Polk County. On 20 September 1999, Marion took Rose for her first visit to defendant at his Polk County office. Marion listed her address in Transylvania County. Marion testified that defendant's office was set up with examination rooms similar to a doctor's office and that there were "medical instruments" in the cabinets in the room. Defendant wore a white coat. Marion testified that, at that first meeting, defendant informed her that "he was a consultant for the Government on viruses." Defendant began rubbing olive oil on Rose's feet and marking them with a magic marker.

Defendant started Rose on a vitamin C regimen to determine whether she was truly diabetic. On 4 October 1999, Marion again brought her daughter to defendant in Polk County who determined that Rose had a virus which caused Rose's blood sugars to be elevated. His treatment attempted to "teach" Rose's immune system to make the virus not affect the blood sugars. Defendant orally and in writing instructed:

> Start 10/4/99, Arnica liquid extract, take five drops on tongue, five times a day, follow with water. Take for five days and stop. For blockages in the blood supply of the kidneys (arteries) pus type blockage. She has lot of poisons in her body and moving to Mexico will be good for patient to receive the care she needs. Remove all other supplements and medications for four weeks except Beyond Chelation Packets. Begin 10/9/99, Beyond Chelation Packets, take one dose each morning with food for four weeks and stop. To reduce infection and raise the immune sys-

tem. Resume treatments in Mexico afterwards. Prepare to stop insulin in approximately four weeks. Diet, a lot of peanut butter and legumes with regular medications.

Marion testified that Defendant instructed her, through telephone conversations relayed by Janice, defendant's employee, to reduce Rose's insulin. On 19 October 1999, defendant instructed Marion to stop all insulin. Over the course of the next three days, defendant called the office "20 to 50 times." Marion testified:

> [Rose] was vomiting. He told me not to take her blood sugar because we would go into shock because it would be so low, but I took her blood sugar and it was 477. He told me that this was a reaction, a shock reaction, it was just stress. I begged him to help me put her back on the insulin. I asked Janice, I told Janice, I said we need to put her back on the insulin, and Janice told me he can no longer see you if you— . . . If you put her back on the insulin, if you don't follow his directions. He told me—I explained to him that I didn't think this was the right time to do this, this wasn't working, and that we needed to put her back on the insulin, and I was talking to him directly and he said to me that her system was weak and that she could beat this virus now. It was like a moon shock and it was a window of opportunity now, and if we didn't take it now, she would never be able to overcome it, and if she didn't overcome it now, that she would be on dialysis in three months. And he assured me that he knew what he was doing, that he had done this hundreds of times and that I would have my little girl back without insulin.

On 21 October 1999, Rose died from diabetic ketoacidosis.

Defendant testified on his own behalf that he held himself out as a naturopath. He testified that it was hard to obtain information from Marion and he called her "one of the most difficult parents that I have ever had to deal with." During multiple calls to defendant from Marion, defendant told Marion to "give insulin now" to Rose. Defendant testified he "never told her to just quit insulin." He told her that he could not prescribe anything but that he could recommend.

> I told her not to [stop insulin]. I told her in the way that insulin is something that—especially type 1, is something that a person is just going to have to take the rest of their life. You're not going to be able to get her off. However, you can supplement that insulin with supplementations of vitamins and so forth, nutrition that

STATE v. PERRY

[159 N.C. App. 30 (2003)]

will help the person, whoever they are, cope with having to take insulin as a type 1 diabetic.

At 7:50 pm on 20 October 1999, defendant called Marion in response to multiple calls from her. Defendant was shocked by how high Rose's blood sugar level was and was "more in, if you will, an argument with her why she's not giving Rosie insulin." Defendant was indicted and tried in Buncombe County.

The jury found defendant guilty of involuntary manslaughter and practicing medicine without a license. The trial court entered judgment and sentenced defendant to a consolidated active sentence of twelve to fifteen months. Defendant appeals.

## II. Issues

Defendant contends the trial court erred in (1) failing to dismiss for improper venue, (2) admitting into evidence a note from defendant's employee to Marion, (3) refusing to allow defendant to question Lieutenant Fredrickson whether the State would issue a license to an illegal business, (4) admitting testimony from an officer concerning what medical records stated, (5) admitting evidence regarding defendant's treatment of another patient, (6) admitting testimony and photographs regarding the appearance of the schools on defendant's diplomas, (7) refusing to admit character evidence of defendant's habit and character for being a law-abiding citizen and not holding himself out as a physician, (8) denying defendant's motion for mistrial because of statements regarding an SBI investigation, (9) denying defendant's motion to dismiss for insufficient evidence, and (10) failing to sustain objection to improper closing arguments.

## III. Venue

[1] Defendant contends the trial court erred in denying defendant's motion to dismiss for improper venue.

Defendant was indicted for both the felony of involuntary manslaughter and the misdemeanor of practicing medicine without a license in Buncombe County. Defendant had lived and worked in Polk County for more than fourteen years. The face-to-face visits between Rose, Marion, and defendant occurred only in Polk County. The listed address for Marion and Rose was in Transylvania County. The cell phone used by Marion was based in Transylvania County. During the last days of Rose's life, she and her mother had been staying in a camp ground inside of Buncombe County. Marion placed cell phone calls

from Buncombe County to defendant in Polk County. He returned those calls to her Transylvania cell phone number while she was in Buncombe County. Rose was admitted to a hospital in Buncombe County where she died.

N.C. Gen. Stat. § 15A-131(c) (2001) provides that "venue . . . lies in the county where the charged offense occurred." "An offense occurs in a county if any act or omission constituting part of the offense occurs within the territorial limits of the county." N.C. Gen. Stat. § 15A-131(e). When acts constituting the offense occur in multiple counties, each county has concurrent venue. N.C. Gen. Stat. § 15A-132(a) (2001). N.C. Gen. Stat. § 15A-132(b) (2001) provides "[i]f charged offenses which may be joined in a single criminal pleading under G.S. 15A-926 occurred in more than one county, each county has concurrent venue as to all charged offenses." N.C. Gen. Stat. § 15A-926(a) (2001) provides for joinder when the offenses "are based on the same act or transaction or on a series of acts or transactions connected together constituting parts of a single scheme or plan."

The State argues that while Rose and Marion were located in Buncombe County, defendant called them, talked with them, and committed both violation of a statute and criminal negligence. Rose died in Buncombe County. These are sufficient "acts or omissions constituting part of the offense" of involuntary manslaughter. N.C. Gen. Stat. § 15A-131. Because the offenses are joinable offenses under N.C. Gen. Stat. § 15A-926(a), venue is proper in Buncombe County for both of the charged offenses. N.C. Gen. Stat. § 15A-131. This assignment of error is overruled.

### IV. Admission of Note to Marion

[2] Defendant contends the trial court erred in allowing Marion to testify to the contents of a "nutriscription" and admitting the "nutriscription" which Marion testified did not come from defendant but from an unknown employee of defendant. We disagree.

The State introduced a copy of a nutriscription from 4 October 1999 through Marion and over defendant's objection. The State introduced, without objection, the original "nutrisciption" and the medical records documenting it through Detective Constance. "Where evidence is admitted over objection and the same evidence has been previously admitted or is later admitted without objection, the benefit of the objection is lost." State v. Alford, 339 N.C. 562, 570, 453 S.E.2d 512, 516 (1995).

By failing to object to the later admission of the same evidence, defendant has waived any benefit of the original objection and failed to preserve the issue for appeal. This assignment of error is overruled.

## V.  Evidence of Privilege License

**[3]** Defendant contends the trial court erred in failing to admit the offer of proof testimony of Lieutenant Fredrickson:

> [Defendant's Counsel]: Officer, based on your investigations that you testified about the issuance of license by the State of North Carolina, the State of North Carolina would not issue a license or a privilege license for an illegal business; would it?
>
> A: No.

Defendant contends the evidence was relevant to show that his practice was not illegal. Defendant was allowed to admit into evidence the following exchange between defendant's counsel and Lieutenant Fredrickson:

> Q.  What knowledge do you have as to what Laurence Perry had to produce to the State of North Carolina to get a privilege license?
>
> A.  We were interested in what—that same question, what you would have to have and we asked what the privilege license was. It was just a formality that any business had to have.
>
> Q.  Any legal business; isn't that correct? You couldn't get a privilege license to practice some business that's against the law; could you?
>
> A.  I don't know. I wouldn't think so.

To be reversible error, defendant must show that "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C. Gen. Stat. § 15A-1443(a). Presuming error in failing to admit the evidence, defendant has failed to prove prejudice in light of the other similar admitted evidence. This assignment of error is overruled.

## VI.  Detective Constance's Testimony

**[4]** Defendant contends the trial court allowed Detective Constance to testify that "there are numerous phone consultations" in the progress notes.

The testimony came while Detective Constance was reading to the jury parts of Rose's medical records seized from defendant. Detective Constance noted that there were "numerous phone consultations" in response to the question "In the progress notes, do the progress notes record when [Marion] would call in and report Rosie's condition?"

Detective Constance was looking at the medical records and indicated that the medical records showed "numerous" phone calls. The medical records were admitted into evidence and published to the jury without any objection. Defendant failed to preserve the objection or to show that "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached." N.C. Gen. Stat. § 15A-1443(a). This assignment of error is overruled.

## VII. Treatment of Martin

**[5]** Defendant contends the trial court erred in admitting the testimony of Mary Martin and of Tekeela Suber regarding defendant's treatment of Mrs. Martin's daughter for type 1 juvenile diabetes starting in 1996. Mrs. Martin testified that during the initial examination of her daughter, defendant put marks on her feet, and "gave her a magnet to put on her back." Defendant presented only a general objection to the testimony which was overruled. Ms. Suber was a registered nurse working with Mrs. Martin and Dr. Boniface to treat the daughter's juvenile diabetes. Ms. Suber testified, "I called [the Martins] because her blood sugars were elevated and Dr. Boniface told me to tell [them] to put her back on insulin."

Rule 404(b) of the N.C. Rules of Evidence allows for the admission of evidence of prior acts to show defendant's plan, motive, intent, knowledge, and absence of mistake. N.C. Gen. Stat. § 8C-1, 404(b). It is a rule of inclusion and defendant's prior acts should be excluded if their "only probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." *State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990). The rule of inclusion of evidence under Rule 404(b) is "constrained by the requirements of similarity and temporal proximity." *State v. Al-Bayyinah*, 356 N.C. 150, 154, 567 S.E.2d 120, 123 (2002) (citing *State v. Lloyd*, 354 N.C. 76, 88, 552 S.E.2d 596, 608 (2001)).

Mrs. Martin testified to multiple aspects of defendant's treatment of her daughter for juvenile diabeties including his belief that her dia-

betes was a virus, his plan to stop her insulin, and incremental decreases in her insulin. Mrs. Martin's daughter's blood sugar rose as a result of the treatment plan. Defendant's treatment of Martin's daughter was similar to the evidence the State presented of defendant's treatment and actions with regard to Rose.

Further, defendant has failed to show that "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached." N.C. Gen. Stat. § 15A-1443(a). These assignments of error are overruled.

### VIII.  Schools Defendant Attended

[6] Defendant contends the trial court erred in admitting evidence regarding the physical locations of the addresses of the universities listed on defendant's diplomas and resume. Defendant contends the evidence is not relevant and even if relevant, it should have been excluded under Rule 403 of the N.C. Rules of Evidence. We disagree.

Evidence is relevant if it has any tendency to make the existence of a fact in issue more or less probable. N.C. Gen. Stat. § 8C-1, Rule 401. Relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403. Whether evidence should be excluded under Rule 403 is discretionary with the trial court and will not be overturned absent a showing of abuse of that discretion. *State v. Anderson*, 350 N.C. 152, 175, 513 S.E.2d 296, 310, *cert. denied*, 528 U.S. 973, 145 L. Ed. 2d 326 (1999).

The State attempted to show the physical locations of the universities which defendant's resume and diplomas showed he attended and which bestowed upon him his title of "doctor." The State argues that the evidence tends to show that defendant was holding himself out as a medical doctor. Defendant has failed to show that the trial court abused its discretion in admitting the evidence. This assignment of error is overruled.

### IX.  Character Evidence of Defendant

[7] Defendant contends the trial court erred in refusing to admit the testimony of Nancy Bahmueller, Carolyn Teague, and Joe Kownslar all of whom testified during an offer of proof that: (1) they knew the

defendant between two and four years; (2) defendant never told them to stop taking medicines that physicians had prescribed; (3) defendant never told them to stop seeing other healthcare providers; (4) defendant did not hold himself out as a doctor; and, (5) defendant held himself out as a naturopath. At trial, defendant's theory for admissibility was that the State "opened the door" to specific instances by presenting evidence regarding defendant's dealings with and treatment of the Martins. Defendant asserts the right to refute the evidence. On appeal, defendant argues the evidence is admissible under Rule 404(a)(1) or Rule 406. Neither of these were argued before the trial court. "Because defendant failed to make this argument at trial, he cannot ' "swap horses between courts in order to get a better mount in [this Court]." ' " *State v. Hamilton*, 351 N.C. 14, 22, 519 S.E.2d 514, 519 (1999) (quoting *State v. Sharpe*, 344 N.C. 190, 194, 473 S.E.2d 3, 5 (1996) (quoting *Weil v. Herring*, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934))). Defendant has failed to properly preserve the issue for appellate review on the grounds asserted. This assignment of error is overruled.

## X. Motion for Mistrial

**[8]** Defendant contends the trial court erred in denying his motion for a mistrial based on Detective Constance's testimony regarding his familiarity of a signature based on a law enforcement investigation.

A motion for mistrial is discretionary with the trial court and will not be overturned absent a showing of an abuse of discretion. *State v. Powell*, 340 N.C. 674, 692, 459 S.E.2d 219, 228 (1995). Defendant contends the trial court abused its discretion because no curative instruction was given and "the mountains of prejudicial and irrelevant evidence admitted."

Detective Constance was testifying to his knowledge of the signature of Gregory Cappenger who signed one of defendant's diplomas. Detective Constance stated, "I worked with or assisted and reviewed a case with the Federal Bureau of Investigation—." Defendant objected and the trial court sustained the objection. Defendant failed to move to strike or request a curative instruction. Defendant waited until seven other witnesses had testified and until the next morning before making his motion for a mistrial based on Detective Constance's statement which was objected to and sustained.

During the hearing on the motion for a mistrial, the trial court asked, "Out of curiosity, if you felt it was so prejudicial, why did

[you] not make some statement about it immediately?" Neither the State nor the trial court remembered the explicit testimony which was the basis of the motion other than that defendant objected, the trial court sustained the objection, and the State did not continue the examination on that basis. The trial court concluded that "the court cannot find that the event which has been described by the defendant, even if it did occur in the manner in which the defendant has described, constituted an error or legal defect in the proceeding inside or outside the courtroom resulting in substantial and irreparable prejudice to the defendant's case." The trial court denied the motion for a mistrial.

Defendant has failed to show that the trial court abused its discretion in denying the motion for a mistrial. This assignment of error is overruled.

## XI. Insufficient Evidence

[9] Defendant contends the trial court erred in denying its motion to dismiss for insufficient evidence made and renewed at the end of the State's evidence and the end of all evidence. We disagree.

A motion to dismiss should be denied if, taking the evidence in a light most favorable to the State, substantial evidence exists of each essential element of the offense charged and of defendant being the perpetrator of the offense. *State v. Earnhardt*, 307 N.C. 62, 65-66, 296 S.E.2d 649, 651 (1982). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980) (citations omitted). "If there is more than a scintilla of competent evidence to support the allegations in the warrant or indictment, it is the court's duty to submit the case to the jury." *State v. Horner*, 248 N.C. 342, 344-45, 103 S.E.2d 694, 696 (1958).

A review of the record shows that the State presented sufficient evidence of the elements of both charges to survive defendant's motion to dismiss. The trial court properly denied defendant's motions. This assignment of error is overruled.

## XII. Closing Arguments

[10] Defendant contends the trial court erred in overruling his objection to the State's closing argument. We disagree.

"During a closing argument to the jury an attorney may not . . . make arguments on the basis of matters outside the record . . . ."

N.C. Gen. Stat. § 15A-1230. Control of the arguments of counsel rests in the discretion of the trial court. This Court "ordinarily will not review the exercise of the trial judge's discretion in this regard unless the impropriety of counsel's remarks is extreme and is clearly calculated to prejudice the jury in its deliberations." *State v. Johnson*, 298 N.C. 355, 369, 259 S.E.2d 752, 761 (1979) (citing *State v. Taylor*, 289 N.C. 223, 221 S.E.2d 359 (1976)). "[T]he impropriety of the argument must be gross indeed in order for this Court to hold that a trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument which defense counsel apparently did not believe was prejudicial when he heard it." *Id.*

Although closing arguments were not recorded, defendant noted in the record:

during the State's closing argument, Mr. Hasty [counsel for the State]—that Mr. Hasty held up some medical records of Dr. Biddle which were not in evidence. He held them up in front of the jury and he read from them in front of the jury showing that what he was reading, that I objected to this, and I want the record to reflect that that—those documents had not been put in evidence and that the matter that he read had not been put into evidence.

The State responded that the argument was proper "because the defense referred to them in their argument."

During the testimony of Marion, defendant's counsel specifically asked Marion about Rose's medical records from Dr. Biddle and read those records into the record through questioning of Marion. The actual medical record was not admitted into evidence. Defendant did not disagree with State's argument that the defense referenced the records during its closing arguments. The contents of the medical records and the existence of the medical records from Dr. Biddle were in evidence. The State did not go outside the scope of the evidence when it read from the records during closing arguments.

Defendant also noted that he objected when the State did the same thing with notes from Officer Frederickson. The trial court responded, "I did not hear anything referred to in the closing argument though that was not testified to by Officer Frederickson." Defendant does not contradict or argue against the trial court's statement that everything the State referred to in closing was in evidence

JEFFERSON PILOT FIN. INS. CO. v. MARSH USA, INC.

[159 N.C. App. 43 (2003)]

through the testimony of Officer Frederickson. The trial court did not abuse its discretion in overruling defendant's objections to the State's closing arguments. This assignment of error is overruled.

## XIII. Conclusion

The trial court did not err in denying defendant's motion to dismiss for improper venue. We hold the trial was free from prejudicial error that defendant assigned and argued.

No Error.

Judges MARTIN and LEVINSON concur.