STATE OF NORTH CAROLINA v. MICHAEL ANTHONY BARNES

No. 74PA96

(Filed 6 December 1996)

**Larceny § 147 (NCI4th)— larceny from the person—insufficient evidence**

The evidence did not support defendant's conviction of larceny from the person where it tended to show that defendant removed a bank bag containing money from below the cash register in a kiosk at a shopping mall and hid it under his shirt while the victim was in a store twenty-five to thirty feet from the kiosk, that the victim confronted defendant while he was in the kiosk, and that defendant left the kiosk before the victim discovered that the bank bag was missing, since the crime of larceny was completed when defendant removed the bank bag from below the cash register, and the bank bag was not in the immediate presence of and under the protection or control of the victim at the time of the taking. The case is remanded for entry of judgment as upon a conviction of nonfelonious larceny because the jury found all of the elements of the submitted lesser included offense of nonfelonious larceny and defendant concedes that he committed nonfelonious larceny.

**Am Jur 2d, Larceny §§ 54, 55.**

**What constitutes larceny "from a person." 74 ALR3d 271.**

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 121 N.C. App. 503, 466 S.E.2d 294 (1996), vacating a judgment entered upon defendant's conviction of larceny from the person by Eagles, J., on 13 January 1995 in Superior Court, Guilford County, and remanding for entry of judgment of misdemeanor larceny. Heard in the Supreme Court 17 October 1996.

*Michael F. Easley, Attorney General, by Mabel Y. Bullock, Special Deputy Attorney General, for the State-appellant.*

*Robert H. Edmunds, Jr., for defendant-appellee.*

STATE v. BARNES

[345 N.C. 146 (1996)]

ORR, Justice.

The State's evidence tended to show that on 11 July 1994, James Morana was working alone at the House of Eyes, a freestanding kiosk in the business of selling sunglasses and optical frames, located in a Greensboro shopping mall. The kiosk was approximately fifteen feet by twenty feet in area and consisted of cabinets and display areas which enclosed all four sides except for one small entryway. At approximately 8:40 p.m., Morana left the kiosk to talk to a salesperson in a neighboring shop about twenty-five to thirty feet away. Another salesperson from the neighboring shop subsequently alerted Morana that someone had entered his kiosk.

Morana immediately returned to his kiosk and saw defendant behind the cash register, in the process of standing up from a crouched position. When Morana questioned him, defendant said that he was looking for sunglasses and denied any wrongdoing. Morana testified, "I told him I was going to look underneath my counter and see if he had taken anything he wasn't supposed to because I knew I had a bank bag stored under there." When Morana stepped past defendant and looked under the counter, defendant began to walk out of the kiosk. Immediately upon looking, Morana discovered that the bank bag, which contained approximately $50.00 in cash and an undeposited check, was missing.

Morana followed defendant toward the mall exit and asked him to stop and return the bank bag. After catching up with defendant at the exit, Morana again asked for the bag. Defendant denied having the bag. However, Morana saw a bulge under defendant's shirt, grabbed the shirt, and saw the bank bag. Defendant attempted to hit Morana and exited the mall. A mall security officer saw defendant run to his car and drive away. Defendant was later identified through his license plate number. A detective left a message for defendant, and defendant called the detective and arranged to meet him at the magistrate's office, where he was arrested.

At trial, the court submitted four possible verdicts to the jury: (1) guilty of common law robbery, (2) guilty of larceny from the person, (3) guilty of nonfelonious larceny, and (4) not guilty. The jury returned a verdict of guilty of larceny from the person. Defendant thereafter pleaded guilty to being a habitual felon, but appealed, alleging that the trial court erred in denying his motion to dismiss the charge of larceny from the person because of the insufficiency of the evidence. The Court of Appeals held that although the evidence sup-

ported the charge of misdemeanor or nonfelonious larceny, the evidence was insufficient to support the charge of larceny from the person. We agree.

"The motion to dismiss must be allowed unless the State presents substantial evidence of each element of the crime charged." *State v. Davis*, 340 N.C. 1, 11, 455 S.E.2d 627, 632, *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 83 (1995). What constitutes substantial evidence is a question of law for the court. *State v. Vause*, 328 N.C. 231, 236, 400 S.E.2d 57, 61 (1991). To be "substantial," evidence must be "existing and real, not just seeming or imaginary." *State v. Earnhardt*, 307 N.C. 62, 66, 296 S.E.2d 649, 652 (1982). "In evaluating a motion to dismiss, the trial court must consider the evidence in the light most favorable to the State, allowing every reasonable inference to be drawn therefrom." *State v. Davis*, 340 N.C. at 12, 455 S.E.2d at 632. However, even when viewed in the light most favorable to the State, the evidence in the case before us does not support the charge of larceny from the person.

This Court recently addressed the crime of larceny from the person in *State v. Buckom*, 328 N.C. 313, 401 S.E.2d 362 (1991). We noted that because the North Carolina General Statutes do not define the phrase "from the person" as it relates to larceny, the common law definition controls. *Id.* at 317, 401 S.E.2d at 364 (citing *State v. Massey*, 273 N.C. 721, 161 S.E.2d 103 (1968)). We quoted with approval from the common law description of "from the person":

> Property is stolen "from the person," if it was under the protection of the person at the time. Property *attached* to the person is under the protection of the person even while he is asleep. And the word "attached" is not to be given a narrow construction in this regard. It will include property which is being held in the hand, or an earring affixed to the ear, or a chain around the neck, or anything in the pockets of clothing actually on the person's body at the moment. Moreover, property may be under the protection of the person although not actually "attached" to him. Thus if a man carrying a heavy suitcase sets it down for a moment to rest, and remains right there to guard it, the suitcase remains under the protection of his person. And if a jeweler removes several diamonds and places them on the counter for the inspection of a customer, under the jeweler's eye, the diamonds are under the protection of the person. On the other hand, one who is asleep is not actually protecting property merely because it is in

his presence. Taking property belonging to a sleeping person, and in his presence at the time, is not larceny *from the person* unless the thing was attached to him, in the pocket of clothing being worn by him, or controlled by him at the time in some equivalent manner.

Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* 342-43 (3d ed. 1982) (footnotes omitted), *quoted in part in State v. Buckom*, 328 N.C. at 317-18, 401 S.E.2d at 365. The crime of larceny from the person is regularly understood to include the taking of property "from one's presence and control." *Id.* Thus, for larceny to be "from the person," the property stolen must be in the immediate presence of and under the protection or control of the victim *at the time the property is taken. Id.; State v. Buckom*, 328 N.C. at 317-18, 401 S.E.2d at 365.

The question before us is whether the bank bag was in the immediate presence of and under the protection or control of Morana at the time the property was taken. The Court of Appeals held that the crime of larceny was completed when defendant removed the bank bag and hid it under his shirt, and because at that time, Morana was absent and the bag was left unprotected, the larceny of the bank bag was not from Morana's person. The State argues that the crime was not complete when defendant hid the bank bag under his shirt, but instead formed a "continuous transaction" which included Morana's subsequent confrontations with defendant.

However, the State relies on cases involving armed robbery, rather than larceny. *See State v. Hope*, 317 N.C. 302, 345 S.E.2d 361 (1986); *State v. Hall*, 305 N.C. 77, 286 S.E.2d 552 (1982), *overruled on other grounds by State v. Diaz*, 317 N.C. 545, 346 S.E.2d 488 (1986); *State v. Lilly*, 32 N.C. App. 467, 232 S.E.2d 495, *disc. rev. denied*, 292 N.C. 643, 235 S.E.2d 64 (1977). " '[T]he exact time relationship, in armed robbery cases, between the violence and the actual taking is unimportant as long as there is one continuing transaction amounting to armed robbery with the elements of violence and of taking so joined in time and circumstances as to be inseparable.' " *State v. Hope*, 317 N.C. at 305-06, 345 S.E.2d at 363-64 (quoting *State v. Lilly*, 32 N.C. App. at 469, 232 S.E.2d at 496-97). The case at bar is distinguishable because it deals with larceny rather than armed robbery. As explained in *State v. Sumpter*, 318 N.C. 102, 347 S.E.2d 396 (1986):

For purposes of larceny the element of taking is complete in the sense of being satisfied at the moment a thief first exercises dominion over the property. *See State v. Carswell*, 296 N.C. 101,

249 S.E.2d 427 (1978) [(the slightest taking and movement of property with the intent to permanently deprive the owner of the property is sufficient to constitute the crime of larceny)]. For purposes of robbery the taking is not over until after the thief succeeds in removing the stolen property from the victim's possession.

*State v. Sumpter,* 318 N.C. at 111, 347 S.E.2d at 401.

Therefore, the crime of larceny was completed when defendant removed the bank bag from below the cash register. Whether this constituted nonfelonious larceny or larceny from the person depends on whether the bank bag was in the immediate presence of and under the protection or control of Morana at the time of the taking. "The reason the crime of larceny from a person is afforded special consideration is to protect the person or immediate presence of the victim from invasion." 50 Am. Jur. 2d *Larceny* § 54 (1995).

In *State v. Buckom,* 328 N.C. 313, 401 S.E.2d 362, this Court held that the evidence supported a conviction for larceny from the person where the defendant openly took money from a cash register drawer while the clerk was making change for him out of the same drawer. Such action clearly constituted an invasion of the victim's person or immediate presence. In *State v. Lee,* 88 N.C. App. 478, 363 S.E.2d 656 (1988), the Court of Appeals held that the evidence did not support a conviction for larceny from the person where the defendant secretly took the victim's purse from her unattended grocery cart while she was four to five steps away, looking for an item in the grocery store. Such action did not constitute an invasion of the victim's person or immediate presence. The facts of the case at bar are more analogous to those of *State v. Lee* than *State v. Buckom.*

In the case at bar, defendant secretly removed the bank bag from below the cash register, and his actions did not constitute an invasion of the victim's person or immediate presence. When defendant entered the kiosk and removed the bank bag from below the cash register, the kiosk was empty, and the bag was unprotected. Morana was twenty-five to thirty feet away from the kiosk, at another shop. At that time, the bag was not in the immediate presence of or under the protection or control of Morana. Morana became aware that defendant had entered the kiosk only after being alerted by a salesperson at another shop, and defendant left the kiosk before Morana discovered that the bank bag was missing.

Because the evidence was insufficient to support a finding that the bank bag was in the immediate presence of and under the protection or control of Morana at the time of the taking, the bag was not taken "from the person" of Morana. Therefore, the trial court erred in denying defendant's motion to dismiss the charge of larceny from the person, and the judgment for larceny from the person while being a habitual felon should be vacated. As the Court of Appeals correctly concluded, because the jury found all of the elements of the submitted lesser included offense of nonfelonious larceny and because defendant concedes that he committed nonfelonious larceny, the case should be remanded for entry of judgment as upon a conviction of nonfelonious larceny. For the foregoing reasons, we affirm the decision of the Court of Appeals.

AFFIRMED.