STATE OF NORTH CAROLINA v. WILLIAM LAMONTE QUICK, Defendant

No. COA01-922

(Filed 6 August 2002)

**Constitutional Law— effective assistance of counsel—tactical decision**

A defendant in an assault with a deadly weapon with intent to kill inflicting serious injury, possession of cocaine, and possession of a firearm by a convicted felon case did not receive ineffective assistance of counsel by failing to call as a witness a psychiatrist who had examined defendant to offer testimony of defendant's mental illness to negate the mental state required for the offenses where the psychiatrist's report had concluded that defendant did know right from wrong at the time of the crimes, the psychiatrist's testimony would not have necessarily helped defendant if he had been called as a witness, and there is no basis to conclude that counsel's decision not to call a doctor as a witness at the trial was anything other than a sound tactical choice.

Appeal by defendant from judgments entered 8 May 2000 by Judge Henry W. Hight, Jr. in Wake County Superior Court. Heard in the Court of Appeals 14 May 2002.

*Attorney General Roy Cooper, by Special Deputy Attorney General Charles J. Murray, for the State.*

*Ligon and Hinton, by Lemuel W. Hinton, for the defendant-appellant.*

HUDSON, Judge.

Defendant appeals his convictions for two counts of assault with a deadly weapon with intent to kill inflicting serious injury, possession of cocaine, and possession of a firearm by a convicted felon, for which he was sentenced to a minimum 362 months and a maximum 454 months.

The charges all arose out of an altercation between defendant, William Lamont Quick, and two Raleigh police officers who were securing a home where they believed illegal drugs were being sold. During these events, defendant shot and injured Officer R.B.

Edmundson and Officer R.L. Warner, and the officers shot at defendant. Defendant ran away from the area, but later turned himself into authorities.

As a result of this incident, defendant was indicted for possession with intent to sell and deliver cocaine, two counts of assault with a deadly weapon with intent to kill inflicting serious injury, two counts of attempted murder, possession of a firearm by a convicted felon, and possession of a stolen firearm. Before trial, defendant attempted suicide twice and was held "under a safekeeping order in the Mental Health Ward at Central Prison." Because he was indigent, defendant requested and received funds from the state to employ "an expert in the field of forensic psychology to examine, evaluate and prepare to testify on behalf of the defendant in this matter." The defendant employed Dr. James E. Bellard, a forensic psychiatrist, who examined defendant and prepared a report concerning defendant's mental condition. At trial, defendant's attorney introduced the report under seal, but did not call Dr. Bellard to testify until the sentencing hearing.

At the trial, the State presented the testimony of the two officers involved, who testified that defendant fired on them first. Defendant contended during trial that he shot the officers in self-defense, and his attorney presented evidence to that effect. Defendant himself testified that he was running away from the scene when he heard gunshots behind him, and he shot back at the officers.

At the close of the State's evidence, the trial court dismissed the charge of possession of a stolen weapon. On 8 May 2000, the jury found defendant guilty of two counts of assault with a deadly weapon with intent to kill inflicting serious injury, possession of cocaine, and possession of a firearm by a convicted felon, for which he was sentenced to a minimum 362 months and a maximum 454 months. The court also recommended that defendant receive mental health treatment while incarcerated. Defendant appeals his convictions.

In his sole argument, defendant contends that he "received ineffective assistance of counsel in violation of his rights under the Sixth Amendment to the United States Constitution and Article I, Section[] 23 of the North Carolina Constitution by counsel's failure to introduce expert testimony of defendant's mental illness to negate the mental state required for the offenses for which defendant was charged." Defendant raised six additional assignments of error in the Record on Appeal, but, as none have been brought forward, they are deemed abandoned. *See* N.C. R. App. Proc. 28(a) (2001).

"A defendant's right to counsel includes the right to the effective assistance of counsel." *State v. Braswell*, 312 N.C. 553, 561, 324 S.E.2d 241, 247 (1985) (citing *McMann v. Richardson*, 397 U.S. 759, 771, 25 L. Ed. 2d 763, 773 (1970)). To obtain relief for ineffective assistance of counsel, the defendant must demonstrate initially that "his counsel's conduct fell below an objective standard of reasonableness." *Id.* at 561-62, 324 S.E.2d at 248 (citing *Strickland v. Washington*, 466 U.S. 668, 688, 80 L. Ed. 2d 674, 693 (1984)). The defendant's burden of proof requires the following:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 80 L. Ed. 2d at 698; *see also State v. Montford*, 137 N.C. App. 495, 502, 529 S.E.2d 247, 252 (2000) (describing the standard of review for an ineffective assistance of counsel claim).

Defendant contends that his attorney erred by not calling Dr. Bellard to testify during the trial, because Dr. Bellard's testimony might have negated the defendant's ability to form the specific intent necessary to commit the crimes charged. Additionally, he argues that Dr. Bellard's testimony might have provided the evidentiary basis for an instruction to the jury on voluntary intoxication and diminished capacity. "The decisions on what witnesses to call, whether and how to conduct cross-examination, . . . and all other strategic and tactical decisions are the exclusive province of the lawyer after consultation with his client. Trial counsel are necessarily given wide latitude in these matters." *State v. Milano*, 297 N.C. 485, 495, 256 S.E.2d 154, 160 (1979) (citations omitted), *overruled on other grounds by State v. Grier*, 307 N.C. 628, 300 S.E.2d 351 (1983).

Further, we have reviewed the report which was submitted to this Court as part of the Record. In part, Dr. Bellard states:

3. Because of his mental illness, Mr. Quick did not, on the night of the crime, fully grasp the wrongfulness of his actions. It is my opinion that Mr. Quick did know right from wrong at the time of the crime. His mental illness was not so severe that it rendered him unable to distinguish from right and wrong. His mental illness was so severe however as to make less clear to him the wrongfulness of his actions. His Mania and drug abuse made him paranoid and considerably more defensive and he believed at the time of the crime that he had "a right to defend himself."

4. Mr. Quick's prognosis is fair. If he can be persuaded to be consistent and regular with taking his medications, he is likely to show a good improvement from his Bipolar illness. Also, in an incarcerated setting, he is much less likely to abuse drugs.

Based on our review, we are not persuaded that, had the doctor testified at trial, his testimony necessarily would have helped the defendant. Under these circumstances, we have no basis to conclude that counsel's decision not to call the doctor as a witness at the trial was anything other than a sound tactical choice.

Consequently, defendant has not satisfied the first prong of *Strickland*, in that he has not shown that his counsel's performance was deficient. *See Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693. Thus, we do not reach the second prong of the *Strickland* test. *See id.* Accordingly, given the standard of review of these issues, we conclude that counsel's failure to call Dr. Bellard to testify did not render counsel's assistance constitutionally defective.

No error.

Judges GREENE and BIGGS concur.