STATE OF NORTH CAROLINA v. SEDRIC BETHEA

No. COA02-248

(Filed 18 February 2003)

**1. Appeal and Error— preservation of issues—motion in limine—failure to object at trial**

Although defendant contends the trial court erred in a first-degree kidnapping, first-degree rape, robbery with a dangerous weapon, and second-degree kidnapping case by overruling defendant's pretrial motion in limine to exclude a witness's testimony regarding an October 1999 incident involving defendant and the witness's then-boyfriend, this assignment of error is dismissed because: (1) defendant failed to preserve the question for appellate review by failing to object when the testimony was offered at trial; and (2) a motion in limine is insufficient to preserve for appeal the question of the admissibility of evidence if defendant fails to further object to that evidence at the time it is offered at trial.

**2. Robbery— dangerous weapon—motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of robbery with a dangerous weapon even though defendant joined with others in the commission of the crime and the theory of acting in concert was not submitted to the jury, because there was substantial evidence to show that one victim's money was taken by defendant with the use or threatened use of a firearm whereby the victim's life was endangered or threatened and that defendant personally committed each element of the offense.

Appeal by defendant from judgments entered 6 April 2001 by Judge David Q. LaBarre in Wake County Superior Court. Heard in the Court of Appeals 8 January 2003.

*Attorney General Roy Cooper, by Assistant Attorney General Kimberly W. Duffley, for the State.*

*John T. Hall for defendant-appellant.*

MARTIN, Judge.

Defendant was charged with the first degree kidnapping and first degree rape of Ashley H., and robbery with a dangerous weapon and second degree kidnapping of Joslyn B. A jury found defendant guilty as charged. Defendant appeals from judgments entered upon these convictions.

The evidence presented at trial tended to show that defendant and his brother, Lamont Bethea, and Ellis Stokes went to Brad Lane's mobile home on 6 May 2000. They were armed with a rifle and handgun. A group of people, including Ashley H. and Joslyn B., were sitting in the living room of the mobile home drinking beer and smoking marijuana. The men told everyone to get on the floor, and demanded to talk to Lane, saying they wanted some cocaine. Upon finding that Lane was not there and that no one else there had cocaine, defendant and his brother told everyone to empty their pockets onto the table in the middle of the room. The group complied, including Joslyn B., who removed about $110 from her pocket and placed it on the table. Defendant and his brother took the money from the table. One of the group said he knew where the cocaine was kept and he and defendant's brother went to the bedroom to look for it. Their search turned up no cocaine and they returned to the living room. Defendant, Lamont Bethea, and Stokes continued to demand information about where they could get cocaine and began physically abusing some of the males present.

Ashley H. testified that she heard defendant whispering to Stokes about her, then defendant began to touch her breasts and genital area with his hands or the gun. Defendant took Ashley H. to the bathroom, kissed and touched her, and asked her to perform fellatio, which she refused. His brother then entered the bathroom, defendant left, and the brother asked her to perform fellatio, which she also refused. Defendant re-entered the bathroom and his brother returned to the living room. Defendant told Ashley H. to get on the floor, she refused, and he pushed her down. At that point, there was commotion in the living room and defendant ran back into the living room and Ashley H. followed. Defendant then took Ashley H. into the backyard, where defendant's brother, then defendant, had sexual intercourse with her. Ashley H. testified that she did not consent to intercourse with either one and that each one was holding the gun as he raped her, thus she did not struggle other than to say "no." At some point, after they had re-entered the mobile home, Stokes took Ashley H. back outside to

ask her where the cocaine was. A car pulled up and Stokes, defendant, and his brother fled.

Ashley H. soon left the scene in her car and stopped a police officer to tell him about the robbery. She then went to her grandmother's house, told her she had been raped, and they went to Wake Medical Center. Ashley H.'s grandmother testified that although Ashley did not cry, she looked like she was "in shock." The State offered evidence tending to show that the DNA of sperm found in vaginal swabs taken from Ashley H. after the incident matched that of defendant.

Ashley H. testified that she had seen both defendant and his brother before 6 May 2000 when she had been present at the mobile home and they had visited Lane. She stated that she heard their names at that point, but did not know which was Sedric and which Lamont. After the events of 6 May 2000, she learned the name of defendant and was able to identify him at trial.

Ellis Stokes testified for the State that he, Lamont Bethea, and defendant had planned to rob drugs from a person named Gillis, who also lived at the mobile home occupied by Brad Lane, and that he had provided the guns used in the robbery. Stokes testified that defendant had told him Ashley H. had performed oral sex on him, but denied having intercourse with her. After learning of the results of the DNA testing, Stokes agreed to cooperate with law enforcement. Wake County Sheriff's Detective E. W. Woodlief testified that after having been warned of his rights, defendant gave a statement in which he admitted that he had sexual intercourse with Ashley H. but asserted it was consensual and in exchange for cocaine.

Joslyn B. testified that she had seen defendant around Knightdale before 6 May 2000. Joslyn B. testified that in October 1999, she and her boyfriend were in his car when her boyfriend stopped to sell drugs to defendant, who was with some others on bicycles. While her boyfriend was showing the drugs to defendant, she heard defendant say, "bounce," which means "to leave." She looked up and defendant was pointing a gun at her boyfriend's head. Her boyfriend tried to get out of the car, but she held him back, saying she wanted to leave. Her boyfriend then drove around trying to find and chase defendant and his friends. When she asked who defendant was, her boyfriend told her, "Sedric Bethea." She was thus able to identify defendant as one of the three who entered the mobile home and robbed her on 6 May 2000.

Defendant offered evidence through the testimony of his mother tending to show that he and Ashley H. had a brief dating relationship prior to 6 May 2000. Defendant's mother testified that Ashley H. had paged Sedric, talked with him on the phone, and that she had seen Ashley H. in her yard when she came to pick up defendant in her car. Another witness, Owen Ryles, testified that he had observed defendant and his brother in the company of Ashley H. and Joslyn B. on two or three occasions prior to the events giving rise to these charges.

---

On appeal, defendant assigns error to (1) the trial court's ruling overruling his motion to exclude evidence regarding the October 1999 incident involving defendant and Joslyn B.'s then-boyfriend and (2) the trial court's denial of his motion to dismiss the charge of robbery with a dangerous weapon on the grounds that the evidence was insufficient to support the charge. We find no error in defendant's trial.

[1] By his first two assignments of error, defendant argues the trial court erred by overruling his pre-trial motion *in limine* to exclude Joslyn B.'s testimony concerning the October 1999 incident involving defendant and her then-boyfriend. Defendant contended in the pre-trial motion and on appeal that the testimony should have been excluded as violative of G.S. § 8C-1, Rules 403 and 404(b). However, defendant has failed to preserve the question for appellate review by failing to object when the testimony was offered at trial. Our courts have "consistently held that '[a] motion *in limine* is insufficient to preserve for appeal the question of the admissibility of evidence if the defendant fails to further object to that evidence at the time it is offered at trial.' " *State v. Hayes*, 350 N.C. 79, 80, 511 S.E.2d 302, 303 (1999) (quoting *State v. Bonnett*, 348 N.C. 417, 437, 502 S.E.2d 563, 576 (1998)). These assignments of error are overruled.

[2] By his remaining assignment of error, defendant contends the trial court erred by denying his motion to dismiss the charge of robbery with a dangerous weapon at the close of all the evidence. He argues that the theory of acting in concert was not submitted to the jury and that the State failed to show that it was defendant who took Joslyn B.'s money from the table. Therefore, defendant contends, the evidence was insufficient to show a taking, an essential element of the offense of robbery with a dangerous weapon.

In ruling on a motion to dismiss, the trial court must determine whether the State has presented substantial evidence on each ele-

ment of the offense with which the defendant is charged and that defendant is the perpetrator. *State v. Lee*, 348 N.C. 474, 488, 501 S.E.2d 334, 343 (1998). Substantial evidence is "relevant evidence which a reasonable mind could accept as adequate to support a conclusion." *Id.* The evidence must be evaluated in the light most favorable to the State, but evidence which raises only a conjecture or suspicion of guilt is insufficient to survive a motion to dismiss. *Id.*

It is true, as argued by defendant, that this Court has held that where a defendant joins with others in the commission of a crime, and the trial court fails to submit an instruction to the jury that the defendant may be guilty if found to have been acting in concert with others, the defendant's conviction of the crime may be upheld only if there is substantial evidence that the defendant personally committed each element of the offense. *State v. Cunningham*, 140 N.C. App. 315, 536 S.E.2d 341 (2000), *review dismissed*, 353 N.C. 385, 547 S.E.2d 24 (2001); *State v. McCoy*, 79 N.C. App. 273, 339 S.E.2d 419 (1986); *State v. Helton*, 79 N.C. App. 566, 339 S.E.2d 814 (1986).

G.S. § 14-87(a) makes it a Class D felony for:

Any person . . . , having in possession or with the use or threatened use of any firearms . . ., whereby the life of a person is endangered or threatened, [to] unlawfully take[] . . . personal property from another.

N.C. Gen. Stat. § 14-87(a) (2002). For the purposes of robbery, a "taking" occurs when the thief removes property from the victim's possession. *State v. Barnes*, 345 N.C. 146, 149-50, 478 S.E.2d 188, 191 (1996) (citing *State v. Sumpter*, 318 N.C. 102, 347 S.E.2d 396 (1986)).

In the present case, Joslyn B. testified that defendant and his brother burst into the house brandishing firearms, that they both demanded that the occupants give up their money and property and place it onto a table, and that she put her money onto the table in compliance with their demands. At that point, there was substantial evidence that defendant had personally removed, or "taken" the money from her possession with the use or threatened use of a firearm. Moreover, when Ashley H. was questioned with respect to who had taken the money and property from the table, she answered: "Both of them . . . Lamont and Sedric." Thus, we hold there was substantial evidence to show that Joslyn B.'s money was taken by defendant with the use or threatened use of a firearm whereby Joslyn B.'s

life was endangered or threatened, and that defendant personally committed each element of the offense. The motion to dismiss the charge of robbery with a dangerous weapon was properly denied.

No error.

Judges HUDSON and STEELMAN concur.