STROUD, Judge.
 

 *628
 
 Defendant appeals from several convictions for theft-related offenses. We vacate defendant's convictions for larceny from the person because the evidence does not establish the necessary elements to sustain a conviction of larceny from the person and remand for judgment to be entered on the lesser-included offense of misdemeanor larceny and any resentencing if necessary due to two of defendant's multiple convictions being vacated. We find no error as to defendant's remaining convictions.
 

 *629
 
 I. Background
 

 The State's evidence tended to show in November 2012, Ms. Ramona Tongdee was at the hospital with her grandmother because her grandfather was hospitalized for a stroke. Ms. Tongdee and her grandmother were in a waiting room furnished with couches, recliners, and chairs. Ms. Tongdee fell asleep on a couch and when she awoke her "purse was on the floor. Rather than kind of tucked away, it was on the floor with things
 
 *818
 
 spilled out of it[.]" Ms. Tongdee's grandmother's purse "was on the couch, in the same manner." Ms. Tongdee was missing her pink .40 caliber semiautomatic pistol and her grandmother was missing $75.00.
 

 The hospital had security video cameras in this area and the security footage showed a man "going through Ms. Tongdee's purse, as well as other family members' property, while they were asleep in the room. Altogether, the time frame spanned about 11 minutes, while the male was going through the their [ (sic) ] property while they slept." Later, in a field near a residence, officers discovered a pink pistol. Mr. Julian Spencer later arrived at the residence and told the officers he was there to get a dog from inside the residence, but he did not have a key. Mr. Spencer then admitted that he was working with defendant.
 

 In April of 2013, Ms. Marcia Humphrey returned to her home and discovered that thousands of dollars of cash and old coins, including an 1857 quarter, were missing from her home. Defendant's fingerprint was found in Ms. Humphrey's home, although Ms. Humphrey did not know him or give him permission to be in her home. Thereafter, defendant's girlfriend pawned Ms. Humphrey's 1857 quarter.
 

 In April of 2014, defendant was indicted for several crimes. Ultimately, the jury convicted him of felonious breaking and/or entering, felonious larceny after breaking and/or entering, felonious possession of stolen goods/property, larceny of a firearm, possession of a stolen firearm, two counts of larceny from the person, felonious possession of stolen goods/property, feloniously conspiring to possess stolen goods/property, and possession of a firearm by felon. In February of 2015, defendant "admitted habitual felon status." (Original in all caps.) The trial court entered judgments, and defendant appeals.
 

 II. Motion to Dismiss
 

 Defendant contends that two of his motions to dismiss should have been allowed.
 

 *630
 
 The standard of review for a motion to dismiss is well known. A defendant's motion to dismiss should be denied if there is substantial evidence of: (1) each essential element of the offense charged, and (2) of defendant's being the perpetrator of the charged offense. Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. The Court must consider the evidence in the light most favorable to the State and the State is entitled to every reasonable inference to be drawn from that evidence.
 

 State v. Johnson
 
 ,
 
 203 N.C.App. 718
 
 , 724,
 
 693 S.E.2d 145
 
 , 148 (2010) (citations and quotation marks omitted).
 

 A. Larceny from the Person
 

 Defendant first contends that the trial court erred in failing to dismiss the charge of larceny from the person from Ms. Tongdee and her grandmother due to insufficiency of the evidence.
 

 The essential elements of larceny are: (1) taking the property of another; (2) carrying it away; (3) without the owner's consent; and (4) with intent to permanently deprive the owner of the property. It is larceny from the person if the property is taken
 
 from the victim's person or within the victim's protection and presence at the time of the taking.
 

 State v. Hull
 
 ,
 
 236 N.C.App. 415
 
 , 418,
 
 762 S.E.2d 915
 
 , 918 (2014) (emphasis added) (citations and quotation marks omitted). Our Supreme Court has explained that the definition of a taking "from the person" was established by the common law:
 

 This Court recently addressed the crime of larceny from the person in
 
 State v. Buckom
 
 ,
 
 328 N.C. 313
 
 ,
 
 401 S.E.2d 362
 
 (1991). We noted that because the North Carolina General Statutes do not define the phrase "from the person" as it relates to larceny, the common law definition controls. We quoted with approval from the common law description of "from the person":
 

 Property is stolen "from the person," if it was under the protection of the person at the time. Property attached to the person is under the protection of the person even while he is asleep. And
 
 *631
 
 the word "attached" is not to be given a narrow construction in this regard. It
 
 *819
 
 will include property which is being held in the hand, or an earring affixed to the ear, or a chain around the neck, or anything in the pockets of clothing actually on the person's body at the moment. Moreover, property may be under the protection of the person although not actually "attached" to him. Thus if a man carrying a heavy suitcase sets it down for a moment to rest, and remains right there to guard it, the suitcase remains under the protection of his person. And if a jeweler removes several diamonds and places them on the counter for the inspection of a customer, under the jeweler's eye, the diamonds are under the protection of the person. On the other hand, one who is asleep is not actually protecting property merely because it is in his presence. Taking property belonging to a sleeping person, and in his presence at the time, is not larceny from the person unless the thing was attached to him, in the pocket of clothing being worn by him, or controlled by him at the time in some equivalent manner.
 

 The crime of larceny from the person is regularly understood to include the taking of property "from one's presence and control." Thus, for larceny to be "from the person," the property stolen must be in the immediate presence of and under the protection or control of the victim at the time the property is taken.
 

 State v. Barnes
 
 ,
 
 345 N.C. 146
 
 , 148-49,
 
 478 S.E.2d 188
 
 , 190 (1996) (citations omitted).
 

 State v. Buckom
 
 clarifies,
 

 At common law, Larciny [sic] from the person is either by privately stealing; or by open and violent assault, which is usually called robbery. Open and violent larciny [sic] from the person, or robbery is the felonious and forcible taking from the person of another, of goods or money to any value by violence or putting him in fear. The difference between the two forms of larceny referred to by Blackstone is that robbery, even in its least aggravated
 
 *632
 
 form, is an open and violent larciny [sic] from the person, or the felonious taking, from the person [of,] or in the presence of[,] another, of goods or money against his will by violence or by putting him in fear, whereas stealing from the person is a concealed, clandestine activity. At common law, larceny from the person differs from robbery in that larceny from the person lacks the requirement that the victim be put in fear. Larceny from the person forms a middle ground in the common law between the private stealing most commonly associated with larceny, and the taking by force and violence commonly associated with robbery.
 

 328 N.C. 313
 
 , 317,
 
 401 S.E.2d 362
 
 , 364-65 (1991) (citations, quotation marks, and ellipses omitted).
 

 Defendant argues that our Supreme Court clarified in
 
 State v. Barnes
 
 that "[t]aking property belonging to a sleeping person, and in his presence at the time, is not larceny from the person unless the thing was attached to him, in the pocket of clothing being worn by him, or controlled by him at the time in some equivalent manner."
 
 345 N.C. 146
 
 , 149,
 
 478 S.E.2d 188
 
 , 190 (1996). Defendant argues that because Ms. Tongdee's purse and her grandmother's purse were not attached to them as they slept, there was insufficient evidence of larceny from the person.
 

 The State's argument essentially concedes that the purses were not attached to or touching the victims and takes a creative technological approach to defendant's contentions. The State argues that even if the purses were not attached to their owners, the purses were still under their protection thanks to their vicarious "eye" of the video cameras in the hospital
 
 [1]
 
 :
 

 Property is under the protection of a person, such that it can be the subject of a larceny from the person, so long as, among other things, it is under the person's eye.
 
 E.g.
 
 ,
 
 State of North Carolina v. Buckom
 
 ,
 
 328 N.C. 313
 
 ,
 
 401 S.E.2d 362
 
 (1991) ("If a jeweler removes several diamonds and places them on the counter for the inspection of a customer, under the jeweler's eye,
 
 *820
 
 the diamonds are under the protection of the person.")
 
 *633
 
 Here, the evidence showed that Ms. Tongdee and [her grandmother] placed their purses essentially right next to their bodies as they lay down to sleep. And the evidence also showed that they went to sleep in a room that was equipped with a video surveillance camera that created a motion picture photo-recording of every human action that occurred during every second while Ms. Tongdee and [her grandmother] slept in the ICU waiting room. This video surveillance camera acted as the functional equivalent to the jeweler's eye in
 
 Buckom.
 

 (Quotation marks and brackets omitted). The State's argument takes the meaning of "under the jeweler's eye," far out of context and beyond its meaning as used in case law.
 
 Buckom
 
 ,
 
 328 N.C. at 318
 
 ,
 
 401 S.E.2d at
 
 365 ;
 
 see
 

 State v. Boston
 
 ,
 
 165 N.C.App. 890
 
 , 893,
 
 600 S.E.2d 863
 
 , 865 (2004).
 

 In
 
 State v. Boston
 
 , this Court noted that cases addressing the situations where property was taken from the person emphasize the importance of "the awareness of the victim of the theft at the time of the taking[.]"
 
 165 N.C.App. at 893
 
 ,
 
 600 S.E.2d at 865
 
 . In
 
 Boston
 
 , the defendant testified that he was having a conversation with the victim in the victim's home and "noticed a wallet on a little table near where defendant was standing. Defendant then took the wallet and walked out the door."
 

 Id.
 

 at 891
 
 ,
 
 600 S.E.2d at 864
 
 . The victim had turned away and did not see the defendant take the wallet.
 

 Id.
 

 at 893
 
 ,
 
 600 S.E.2d at 865
 
 . This Court determined that the trial court erred by failing to instruct the jury on misdemeanor larceny because the "defendant presented evidence that the wallet was not under the eye of, or the protection or control of, Mr. Skinner at the time the wallet was taken."
 

 Id.
 

 The court in
 
 Boston
 
 noted that its
 

 holding is consistent with the North Carolina Supreme Court's decision in
 
 State v. Buckom
 
 ,
 
 328 N.C. 313
 
 ,
 
 401 S.E.2d 362
 
 (1991). In
 
 Buckom
 
 , the Court held that the "from the person" element of larceny from the person was supported by evidence that the defendant took money from the open drawer of a cash register at the same time the cashier was reaching in the drawer to make change. What distinguishes
 
 Buckom
 
 from
 
 Lee
 

 [
 

 2
 

 ]
 
 and
 
 Barnes
 
 is not
 
 *634
 
 only the distance involved, which is relevant to immediate presence, but also the awareness of the victim of the theft at the time of the taking, which is relevant to protection and control. This distinction is further supported by dicta in
 
 Buckom
 
 and
 
 Barnes
 
 . Both cases cited the example of diamonds placed on the counter and "under the jeweler's eye" as remaining under the protection of the jeweler.
 
 Buckom,
 

 328 N.C. at 318
 
 ,
 
 401 S.E.2d at
 
 365 ;
 
 Barnes
 
 ,
 
 345 N.C. at 148
 
 ,
 
 478 S.E.2d at 190
 
 .
 

 Id.
 

 Video surveillance systems may make a photographic record of a taking, but they are no substitute for "the awareness of the victim of the theft at the time of the taking[.]"
 

 Id.
 

 Many stores, office buildings, and even city streets now have video camera surveillance. Furthermore, it is increasingly common for individuals to have video security systems in their yards and homes, and some systems will allow individuals to view the video from their home system on their phone or computer when away from the residence. The State's theory of video surveillance as the "functional equivalent" of the human eye would convert any larceny committed in areas monitored by video to larceny of the person. Sometimes technological changes may lead quite reasonably to changes in the law, but the essence of larceny from the person is still that it is
 
 from the person,
 
 which requires the person's awareness at the time of the taking unless the item was attached to the person.
 
 See
 
 id.
 

 Nor does the evidence here show that the purses were attached, in the owners' pocket, or controlled in a like manner.
 
 See
 

 Barnes
 
 ,
 
 345 N.C. at 149
 
 ,
 
 478 S.E.2d at 190
 
 . Ms. Tongdee testified that her purse was between her and her daughter "touching the
 
 *821
 
 couch" and that her grandmother's "purse was between her [grandmother] and the recliner and the couch[.]" Even though the purses were close to their owners, the evidence does not show that the purses were actually even touching them. Because Ms. Tongdee and her grandmother were sleeping at the time of the larceny, without their purses "attached to [them], in the pocket of clothing being worn by [them], or controlled by [them] at the time in some equivalent manner[,]"
 

 id.
 

 we conclude that there was insufficient evidence that "the property [was] taken from the victim[s'] person or within the victim[s'] protection and presence at the time of the taking."
 
 Hull
 
 ,
 
 236 N.C.App. at 418
 
 ,
 
 762 S.E.2d at 918
 
 . Therefore, we vacate and remand for entry of judgment on misdemeanor larceny.
 
 See generally
 

 Lee
 
 , 88 N.C.App. at 479-80, 363 S.E.2d at 657 ("In vacating the larceny from the person conviction, however, we note that the evidence and
 
 *635
 
 verdict support a conviction of the lesser included offense of misdemeanor larceny, and remand the matter to the trial court so defendant can be sentenced for that offense in compliance with G.S. 14-3(a)." (citation omitted)).
 

 B. Conspiracy to Possess Stolen Property
 

 Defendant next contends that the trial court erred in failing to dismiss the charges of conspiracy to possess stolen goods,
 
 i.e.
 
 , the gun. Defendant concedes he was in possession of stolen property but argues the evidence was insufficient as to any conspiracy. "A criminal conspiracy is an agreement between two or more persons to do an unlawful act. A conspiracy may be shown by express agreement or an implied understanding. A conspiracy may be shown by circumstantial evidence[.]"
 
 State v. Choppy
 
 ,
 
 141 N.C.App. 32
 
 , 39,
 
 539 S.E.2d 44
 
 , 49 (2000) (citations, quotation marks, and brackets omitted).
 

 The evidence showed that defendant made a phone call from jail to Mr. Spencer. Thereafter, Mr. Spencer showed up at the residence where the pistol was and admitted to "working with" defendant. The jury could reasonably infer from the evidence that Mr. Spencer conspired with defendant to possess the pistol.
 
 See
 
 id.
 

 We conclude that there was sufficient evidence of a conspiracy to possess stolen property,
 
 see
 

 id.
 

 and thus the trial court properly denied defendant's motion to dismiss. This argument is overruled.
 

 III. Hearsay Testimony
 

 Defendant next raises several hearsay issues.
 

 A. Hearsay with Same Evidence Admitted
 

 Defendant contends that the trial court erred in overruling his objection to hearsay as to Detective Lincoln's testimony regarding what a witness told him about a vehicle description, the owner of that vehicle, and the relationship between defendant and the vehicle owner, defendant's girlfriend. We need not review these arguments because even if Detective Lincoln's testimony was inadmissible hearsay, the same evidence was admitted on several other occasions without objection, including by another detective.
 
 See
 

 State v. Perry
 
 ,
 
 159 N.C.App. 30
 
 , 37,
 
 582 S.E.2d 708
 
 , 713 (2003) ("By failing to object to the later admission of the same evidence, defendant has waived any benefit of the original objection and failed to preserve the issue for appeal."). These arguments are overruled.
 

 *636
 
 B. Plain Error
 

 Defendant also contends that although he failed to object, the trial court committed plain error in allowing Detective Lincoln to testify that Mr. Spencer was linked to several other crimes with defendant, and he had admitted to working with defendant.
 

 [T]he plain error standard of review applies on appeal to unpreserved instructional or evidentiary error. For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings[.]
 

 *822
 

 State v. Lawrence
 
 ,
 
 365 N.C. 506
 
 , 518,
 
 723 S.E.2d 326
 
 , 334 (2012) (citations, quotation marks, and brackets omitted). Considering the other evidence regarding a conspiracy with Mr. Spencer, including that defendant called him from jail, and thereafter Mr. Spencer showed up at the location where the stolen pistol was hidden, even if there was hearsay testimony as to the relationship between the two, we do not believe this "error had a probable impact on the jury's finding that the defendant was guilty."
 

 Id.
 

 IV. Ineffective Assistance of Counsel
 

 Defendant next argues that he received ineffective assistance of counsel because his attorney elicited the hearsay testimony regarding the relationship between himself and Mr. Spencer.
 

 To obtain relief for ineffective assistance of counsel, the defendant must demonstrate initially that his counsel's conduct fell below an objective standard of reasonableness. The defendant's burden of proof requires the following:
 

 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment.
 

 *637
 
 Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
 

 The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
 

 State v. Quick
 
 ,
 
 152 N.C.App. 220
 
 , 222,
 
 566 S.E.2d 735
 
 , 737 (2002) (citations and quotation marks omitted). Even generously presuming
 
 arguendo
 
 that defendant's attorney committed an error in his cross-examination of Detective Lincoln, defendant has not shown that, "but for counsel's unprofessional errors, the result of the proceeding would have been different" given the telephone call between the two from jail coupled with Mr. Spencer thereafter showing up where the gun was hidden.
 

 Id.
 

 We conclude that defendant did not receive ineffective assistance of counsel. This argument is overruled.
 

 V. Jury Instructions
 

 Defendant next contends that the trial court committed plain error in reinstructing the jury on larceny from the person as the instructions "amounted to a directed verdict of guilty since the court did not explain that the person would not physically possess the property or not be within the person's protection if the person was asleep at the time of the taking." (Original in all caps.) As we have already vacated and remanded for defendant's conviction of larceny of the person and as defendant does not challenge the instruction regarding the elements of misdemeanor larceny, we need not address this issue.
 

 VI. Arrest Judgment
 

 Lastly, defendant contends that the trial "court should arrest judgment on one of the two larceny of the persons in 13 CRS 53006 since the thefts occurred during a continuous transaction and is thus one larceny for the purposes of conviction and sentencing." (Original in all caps.) Defendant contends that his theft of the gun from Ms. Tongdee and the cash from her grandmother were part of one continuous transaction. Defendant cites to
 
 State v. Froneberger
 
 , where the defendant was convicted after pawning items of silver from the same larceny victim on
 
 *638
 
 four separate occasions, and this Court set aside three of the convictions because there was no evidence that the larceny was not actually one transaction, but then defendant pawned the items over time.
 
 See
 

 State v. Froneberger
 
 ,
 
 81 N.C.App. 398
 
 ,
 
 344 S.E.2d 344
 
 (1986). The Court noted the general rule, "A single larceny offense is committed when, as part of one continuous act or transaction, a perpetrator steals several items at the same time and place."
 

 Id.
 

 at 401
 
 ,
 
 344 S.E.2d at 347
 
 . Thus, because in
 
 Froneberger,
 
 all of the items stolen belonged to the same owner and were taken from the same place without any evidence that the items were taken at different times, this Court set aside three of
 
 *823
 
 the convictions.
 

 Id.
 

 at 401-02
 
 ,
 
 344 S.E.2d at 347
 
 . Evidence indicating property was taken from the same person led to only one conviction of larceny for the defendant.
 
 See
 
 id.
 

 But here, the takings were from two separate victims. In an analogous situation, regarding robbery, this Court has determined that when the "defendants threatened the use of force on separate victims and took property from each of them. ... [E]ach separate victim was deprived of property. The armed robbery of each person is a separate and distinct offense, for which defendants may be prosecuted and punished."
 
 State v. Johnson
 
 ,
 
 23 N.C.App. 52
 
 , 56,
 
 208 S.E.2d 206
 
 , 209 (1974). Here, defendant took property from both Ms. Tongdee and her grandmother. In fact, the jury saw the video surveillance recording which showed that defendant walked up to the couch where Ms. Tongdee was sleeping, took a purse, went through it, took the gun, began to walk away, and then turned around, walked back to the waiting area, and grabbed a purse from a chair where Ms. Tongdee's grandmother was asleep. Defendant walked away after taking Ms. Tongdee's gun and appeared to be leaving, but then he returned to take her grandmother's purse.
 

 The elements of larceny are: "(1) taking the property of another; (2) carrying it away; (3) without the owner's consent; and (4) with intent to permanently deprive the owner of the property."
 
 Hull
 
 ,
 
 236 N.C.App. at 418
 
 ,
 
 762 S.E.2d at 918
 
 . Here defendant took and carried away property belonging to two separate victims, without either owner's consent, and with the intent to permanently deprive each of them of their personal property, and thus the jury was properly allowed to consider both charges and the trial court properly sentenced defendant upon them.
 
 See generally
 

 Johnson,
 

 23 N.C.App. at 56
 
 ,
 
 208 S.E.2d at 209
 
 . This argument is overruled.
 

 *639
 
 VII. Conclusion
 

 For the foregoing reasons, we vacate defendant's convictions for larceny from the person and remand for entry of judgments for misdemeanor larceny and any necessary resentencing on defendant's multiple convictions. As to all other issues raised on appeal, we find no error.
 

 VACATED and REMANDED in part; NO ERROR in part.
 

 Judges CALABRIA and TYSON concur.
 

 [1]
 

 The videotape of the incident is not in our record, so our statement of the facts and analysis is based upon the testimony at trial, some of which describes what is happening in the video.
 

 [2]
 

 In
 
 State v. Lee
 
 , this Court determined that the taking of a handbag from a grocery cart when the owner was "four or five steps away" looking at the grocery shelves was not larceny from the person.
 
 88 N.C.App. 478
 
 , 478-79,
 
 363 S.E.2d 656
 
 , 656 (1988) (quotation marks omitted).