MARTIN, Chief Justice.
In this case, defendant was overpaid because a payroll processor accidentally typed “$120,000” instead of “$1,200” into a payment processing system, resulting in a total payment (after deductions) of $118,729.49. Although defendant was informed of the error and was asked not to remove the excess funds from his bank account, he made a series of withdrawals and transfers totaling $116,861.80. We must decide *632 whether the State produced sufficient evidence to support defendant’s convictions for three counts of felonious larceny.
When the overpayment occurred, defendant Keyshawn Jones[1] was a truck driver who worked as an independent contractor. At that time, he was driving trucks for EF Corporation, which was doing business as WEST Motor Freight (West). West gave its drivers the option to have money withheld every payroll period and placed in a “maintenance account” for the driver. Defendant participated in the maintenance account program and, in July 2012, requested $1,200 from his maintenance account.
But Sherry Hojecki, West’s payroll processor, made an error while trying to type in the $1,200 payment, accidentally typing in “$120,000” instead. The final statement indicated that, after payroll deductions, defendant was to be given $118,729.49. Hojecki sent a report to M&T Bank, the bank that held West’s funds, directing that this $118,729.49 figure be paid by direct deposit to defendant’s account.
The next morning, Hojecki realized her error and tried to stop the transaction. She also told defendant, through his agent, about the error and requested that defendant not withdraw or transfer the excess funds from his account. The stop transaction did not succeed, however, and the deposit went through. As a result, $118,729.49 was deposited in defendant’s State Employees’ Credit Union (SECU) account. West promptly tried to initiate a reversal of the deposit.
Despite West’s instructions, defendant made several withdrawals and transfers that removed almost all of the excess funds from his account. Three days after being asked not to withdraw the funds, defendant made seven ATM cash withdrawals of $1,000 each, totaling $7,000. He also electronically transferred $20,000 from his checking account to his savings account. The next day, defendant went to one of SECU’s branch locations to withdraw more of the money. The teller who assisted him noticed the deposit of $118,729.49 and asked defendant why such a large amount of money had been deposited into his account. Defendant replied that he was in business with someone else and had sold his part of the business. Defendant requested two cashier’s checks in the amounts of $21,117.80 and $2,000. He also withdrew $66,744 from his checking account and used a portion of that amount to purchase a third *633 cashier’s check. These three withdrawals totaled $89,861.80. Because defendant had withdrawn or transferred virtually all of the money in question, the reversal that West had tried to initiate was not successful.
Defendant was later indicted for three counts of larceny and three counts of possession of stolen goods. The three larceny counts each charged defendant with “tak[ing] and carry[ing] away” a discrete amount of money from West—specifically, with taking and carrying away $7,000, $20,000, and $89,861.80, respectively. At the close of the State’s evidence, the State made a motion to dismiss the three possession-of-stolen-goods counts, which the trial court granted. After the trial court ruled on the State’s motion, defendant moved to dismiss the remaining charges based on insufficiency of the evidence. The trial court denied defendant’s motion. Defendant renewed his motion at the close of all evidence, and the trial court again denied defendant’s motion. The jury found defendant guilty of all three counts of larceny. Defendant appealed to the Court of Appeals, and the Court of Appeals vacated defendant’s convictions, finding that he had not committed a trespassory taking. State v. Jones, _ N.C. App. _, _, 781 S.E.2d 333, 339 (2016). The State petitioned this Court for discretionary review, and we allowed the State’s petition.
The question before us is whether the State presented sufficient evidence of felonious larceny. A defendant is guilty of larceny if the State proves that he “(a) took the property of another; (b) carried it away; (c) without the owner’s consent; and (d) with the intent to deprive the owner of his property permanently.” State v. White, 322 N.C. 506, 518, 369 S.E.2d 813, 819 (1988) (citing State v. Perry, 305 N.C. 225, 233, 287 S.E.2d 810, 815 (1982), overruled on other grounds by State v. Mumford, 364 N.C. 394, 699 S.E.2d 911 (2010)). “To survive a motion to dismiss for insufficient evidence, the State must present ‘substantial evidence of all the material elements of the offense charged and that the defendant was the perpetrator of the offense.’ ” State v. Campbell, 368 N.C. 83, 87, 772 S.E.2d 440, 444 (2015) (quoting State v. Myrick, 306 N.C. 110, 113-14, 291 S.E.2d 577, 579 (1982)). Whether the evidence that the State presented at trial was substantial “is a question of law for the court.” State v. Barnes, 345 N.C. 146, 148, 478 S.E.2d 188, 189 (1996) (citing State v. Vause, 328 N.C. 231, 236, 400 S.E.2d 57, 61 (1991)). A reviewing court must evaluate the evidence “in the fight most favorable to the State, allowing every reasonable inference to be drawn therefrom.” State v. Davis, 340 N.C. 1, 12, 455 S.E.2d 627, 632, cert. denied, 516 U.S. 846 (1995).
*634 Here, it is beyond dispute that defendant carried property away, and that—assuming the property did not belong to him-—he did so with the intent to permanently deprive the owner of the property, and without the owner’s consent. Thus, the only issue in this case is whether defendant “took” the property of another when he withdrew and transferred money from his bank account.
To constitute a larceny, a taking must be wrongful. See State v. Bowers, 273 N.C. 652, 655, 161 S.E.2d 11, 14 (1968). In other words, the taking must be by an act of trespass. See id.; State v. Webb, 87 N.C. 558, 559 (1882). A larcenous trespass may be either actual or constructive. Bowers, 273 N.C. at 655,161 S.E.2d at 14. A constructive trespass occurs “when possession of the property is fraudulently obtained by some trick or artifice.” Id. (quoting State v. Griffin, 239 N.C. 41, 45, 79 S.E.2d 230, 232-33 (1953)). An actual trespass, on the other hand, occurs when the taking is without the consent of the owner. See 50 Am. Jur. 2d Larceny § 22 (2017); 3 Wayne R. LaFave, Substantive Criminal Law § 19.2(a), at 63 (2d ed. 2003) [hereinafter Substantive Criminal Law]; Rollin M. Perkins & Ronald N. Boyce, Criminal Law 303-04 (3d ed. 1982).
However the trespass occurs, it must be against the possession of another. See Webb, 87 N.C. at 559 (noting that a person with an interest in property may still be guilty of larceny if he “commit[s] a trespass upon the possession of’ another); Substantive Criminal Law § 19.1(a), at 57 (noting that larceny is “a common law crime . . . committed when one person misappropriate [s] another’s property by means of taking it from his possession without his consent” (emphasis added)). Possession of property can also be actual or constructive, though the meaning of these terms differs from their meaning in the trespass context.[2] See, e.g., State v. Weaver, 359 N.C. 246, 259, 607 S.E.2d 599, 606-07 (2005). With respect to the crime of possession of a controlled substance, this Court has stated that “[a] person is.in constructive possession of a thing when, while not having actual possession, he has the intent and capability to maintain control and dominion over that thing.” State v. Beaver, 317 N.C. 643, 648, 346 S.E.2d 476, 480 (1986). The Court of Appeals has adopted this test for constructive possession in the context of other offenses as well, including larceny. See, e.g., State v. McNair, __ N.C. App. _, _, _ S.E.2d _, _, No. COA16-707, 2017 WL 1381591, at *6 (Apr. 18, 2017) (possession of burglary tools); State v. Bailey, 233 N.C. App. 688, 691, *635 757 S.E.2d 491, 493, disc. rev. denied, 367 N.C. 789, 766 S.E.2d 678 (2014) (possession of a firearm by a felon); State v. Phillips, 172 N.C. App. 143, 146-47, 615 S.E.2d 880, 882-83 (2005) (possession of stolen property); State v. Osborne, 149 N.C. App. 235, 238-39, 562 S.E.2d 528, 531, aff'd per curiam, 356 N.C. 424, 571 S.E.2d 584 (2002) (larceny); State v. Bonner, 91 N.C. App. 424, 426, 371 S.E.2d 773, 775 (1988), disc. rev. denied, 323 N.C. 705, 377 S.E.2d 227 (1989) (embezzlement). We implicitly endorsed applying this test to the embezzlement context in State v. Weaver, see 359 N.C. at 259, 607 S.E.2d at 606-07, and we explicitly adopt it in the larceny context here.
To determine whether defendant took West’s property by trespass, then, we must first determine whether West retained actual or constructive possession of the excess funds after they had been deposited in defendant’s SECU account. Account holders generally do not have actual possession of funds in their bank accounts, and there is no indication in the record that West had actual possession of the funds here, even when they were still in its own account. See Lipe v. Guilford Nat’l Bank, 236 N.C. 328, 330-31, 72 S.E.2d 759, 761 (1952); Ann Graham, 1 Banking Law (Matthew Bender & Co., Inc.) § 9.05, at 9 14 (Feb. 2005) (“Absent some special arrangement between the parties, money deposited in a bank becomes the property of the bank and is available for use by the bank in its business.”). Because there is no evidence that West had actual possession of the funds in its own bank account, West certainly did not retain actual possession of the funds that were transferred to defendant’s bank account.
West did, however, retain constructive possession of the excess funds even after they had been transferred to defendant’s account. From the time that defendant first knew about the excess funds transfer up until the time that defendant removed the funds from his account, West had the intent and capability to maintain control and dominion over the funds by effecting a reversal of the deposit. The fact that the reversal order was not successful—because defendant had removed the funds before the reversal could go through—does not indicate that West lacked constructive possession when the funds were in defendant’s account. All it shows is that defendant’s removal of the funds deprived West of constructive possession, which is consistent with all larcenies. After all, in every larceny, the possessor loses—for at least the briefest of moments, see State v. Green, 81 N.C. 560, 562 (1879)—the capability to control the property. As we have seen, that is what larceny is—a trespass against the rightful possessor’s possession.
*636 Having determined that the excess funds were in West’s possession even after they were deposited into defendant’s account, we must ascertain whether defendant simultaneously had possession of the funds once they were in his account. If he did, then he could not have committed larceny, because a defendant cannot commit larceny of goods that he already possesses. See Substantive Criminal Law § 19.2(a), at 62 (“If the wrongdoer fraudulently converts property already properly in his possession, he does not take it from anyone’s possession and so cannot be guilty of larceny.”).
We have not squarely addressed a situation like this one before, in which a defendant passively but knowingly received an overpayment by direct deposit and then proceeded to withdraw the excess funds against the wishes of the rightful possessor. But this case is akin to a case in which a person walks into a candy store and buys fifty cents’ worth of candy. He hands the store owner a twenty dollar bill, only to be kicked out of the store, and the store owner pockets the bill. In that case, the store owner would be guilty of larceny because he did not have possession of the-bill; the customer retained constructive possession of it, leaving the store owner -with only custody of it. See id. §§ 19.1(a), at 59, 19.2(c), at 67. Similarly, here, because West retained constructive possession of the excess funds in defendant’s account, and because defendant knew that West had the intent and capability to control the excess funds through a reversal of the deposit, defendant had no possessory interest in the funds. Like the store owner who accepts a bill that is worth more than he is owed without returning the change, defendant was simply the recipient of funds that he knew were supposed to be returned in large part. He therefore had mere custody of the funds, not possession of them.
When a person has mere custody of property, that person may be convicted of larceny when he appropriates the property to his own use with felonious intent. See State v. Ruffin, 164 N.C. 416, 417, 79 S.E. 417, 417 (1913). This is precisely because the property remains in the constructive possession of the rightful possessor, and the later appropriation interferes with that property right. Id; see also State v. Tilley, 239 N.C. 245, 249, 79 S.E.2d 473, 476 (1954) (characterizing a warehouse custodian as having been “entrusted at most with the bare custody of the goods, whose possession in contemplation of law remained in the [owner] until [the defendant] feloniously took and carried them away”); Substantive Criminal Law § 19.1(a), at 58-59. The moment that the person in custody of the property wrongfully interferes with the rightful possessor’s possessory interest is the moment that he takes that property.
*637 So, because defendant lacked possession of the excess funds in his bank account, he “took” those funds when he removed them from his account through transfers and withdrawals. Those acts are what deprived West of constructive possession, by depriving West of its ability to effect a reversal of its excessive funds transfer. The State therefore presented sufficient evidence that defendant took West’s property by an act of trespass when he removed the excess funds from his account.
Because we hold that the State presented sufficient evidence in support of defendant’s larceny convictions, we reverse the decision of the Court of Appeals.
REVERSED.

. D efendant states in Ms brief that the correct spelling of Ms first name is “Keyshaun, ” not “Keyshawn.” Because the trial court’s judgment used the spelhng “Keyshawn,” however, that is what we use here.

. In other words, while we have just discussed actual and constructive trespass, this issue—whether a person or entity has actual or constructive possession—is a wholly separate one.