IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-294

No. COA21-202

Filed 3 May 2022

Brunswick County, Nos. 09-CRS-56342, 09-CRS-56348, 09-CRS-56687

STATE OF NORTH CAROLINA,

v.

JABAR BALLARD, Defendant.

Appeal by Defendant from order entered 15 October 2020 by Judge J. Stanley Carmical in Brunswick County Superior Court. Heard in the Court of Appeals 2 November 2021.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Zachary K. Dunn, for the State.*

> *Hynson Law, PLLC, by Warren D. Hynson, for the Defendant.*

JACKSON, Judge.

¶ 1 Jabar Ballard ("Defendant") appeals from an order denying his motion for appropriate relief ("MAR"). We affirm the trial court's *Brady* and *Napue* conclusions but hold that the trial court erred by (1) failing to conduct a hearing on Defendant's ineffective assistance of counsel ("IAC") claims and (2) barring Defendant from filing a future MAR. We therefore vacate the IAC portion of the order and the portion barring Defendant from filing a future MAR, and remand this case for an evidentiary hearing on Defendant's IAC claims.

## I.  Background

This case deals with post-conviction claims raised by Defendant in an MAR. After a jury trial held in October 2011, Defendant was found guilty of robbery with a firearm, two counts of assault by pointing a gun, and possession of a firearm. Defendant challenged his conviction on appeal to this Court, and we found no error in an unpublished opinion filed 7 August 2012. *State v. Ballard*, 222 N.C. App. 317, 729 S.E.2d 730 (2012) (unpublished), *cert. and dis. rev. denied*, 366 N.C. 429, 736 S.E.2d 505 (2013).  Thereafter, Defendant filed an MAR in Brunswick County Superior Court.

### A. The Robbery and Defendant's Trial

In the early morning of 13 November 2009, Hardy Ballard, III, and his fifteen-year-old son Kashon McCall were leaving their home for work and school when they were approached by a masked man with a gun.  Hardy recognized the voice and face of the man as that of his cousin, Defendant.  Hardy's grandfather and Defendant's grandfather were brothers; Hardy and Defendant knew each other when they were growing up but did not remain close as adults.  Kashon also claimed to recognize Defendant, although they had only met a few times.

When Defendant approached Hardy and Kashon, he told Kashon to get on the ground and pointed the gun to Hardy's head.  Hardy gave his wallet to Defendant, and then went inside the home to retrieve more money, leaving Kashon outside with

Defendant. Kashon remained on the ground with Defendant's gun at the back of his head. From inside the home, Hardy's wife, Nikita Ballard, called the police, and Hardy threw more cash outside the back door of the home. Defendant collected the money and left.

¶ 5 When the police arrived, Hardy and Kashon were both asked to write statements. Hardy told the police that Defendant was the perpetrator and reflected that in his statement. Kashon did not speak with the police about Defendant's identity on the day of the robbery, and the contents of his original statement remain unclear.[1]

¶ 6 The State presented four witnesses at trial, including both Hardy and Kashon, Hardy's wife, and Defendant's probation officer. Both Hardy and Kashon testified at trial that they identified the perpetrator as Defendant. Nikita testified to seeing a gunman from inside the house, but she could not identify him. Defendant's probation officer was not a witness to the crime, but instead testified to Defendant's possible motive: he was in violation of his probation for being $500 in arrears prior to the robbery, which he paid four days after the robbery.

---

[1] The police department lost the entire police file for this case, including Kashon's original statement, and the only photocopy of the statement was illegible. Kashon testified at trial that he could not recall what he wrote in his original statement, but he maintained that he recognized Defendant. The disputed contents of the statement premise Defendant's *Brady* claim, which we address below.

¶ 7        Defendant's trial counsel prepared a list of seven potential defense witnesses, but only presented one at trial.  Trial counsel also notified the prosecutor of five potential alibi witnesses who were willing to testify that Defendant was seen at home the morning of the crime.  Ultimately, trial counsel did not present any alibi witness at trial.

¶ 8        The jury convicted Defendant of robbery with a firearm, two counts of assault by pointing a gun, and possession of a firearm by a felon.  Defendant was sentenced to a term of 146 to 185 months of incarceration for the robbery and assault convictions and a consecutive term of 29 to 35 months for possession of a firearm.

**B. Defendant's MAR**

¶ 9        Defendant filed an MAR *pro se* in Brunswick County Superior Court, and thereafter his counsel filed an amended MAR.  In his amended MAR, Defendant raised eight total claims: one *Brady* claim, one *Napue* claim, and six IAC claims.  Defendant's specific IAC claims alleged that trial counsel failed to (1) present known impeachment evidence of Hardy Ballard, III; (2) present known alibi witnesses and interview other known alibi witnesses; (3) pursue or compel known exculpatory evidence; (4) impeach Kashon McCall with testimony from Police Chief C. Taylor; (5) challenge identification evidence with expert testimony; and (6) properly request the pattern jury instruction on identification.  In an appendix of exhibits supporting his MAR, Defendant submitted hundreds of pages of documents, including sworn

statements from Defendant's trial counsel, family members, and potential alibi witnesses. Defendant sought an evidentiary hearing on his claims, or alternatively, for his convictions to be vacated and a new trial granted.

¶ 10 The trial court dismissed all of Defendant's claims in an order ("Order") without holding an evidentiary hearing. In the Order, specifically regarding the IAC claims, the trial court found that "Defendant's first, second, fourth and fifth assertions within his ineffective assistance of counsel claim were strategic decisions regarding witnesses made by Defendant's trial counsel." The trial court also found that, with regard to Defendant's sixth assertion, "trial counsel did request the pattern jury instruction on identification" which was denied in the discretion of the trial judge. Accordingly, for all but Defendant's third assertion, the trial court found that trial counsel's conduct did not fall below an objective standard of reasonableness. Lastly, for Defendant's third assertion, the trial court found that "Defendant's trial counsel deficiently performed when she failed to pursue or obtain a legible copy of Kashon McCall's written statement," but that the second *Strickland* prong was not satisfied because Defendant failed to establish that but for counsel's error the trial would have had a different outcome.

¶ 11 On 21 October 2020, Defendant filed a notice of intent to seek appellate review and a request for the appointment of appellate counsel. Defendant filed a petition for writ of certiorari, seeking appellate review of the Order denying his MAR. This Court

granted the petition in an order dated 29 January 2021.

## II.    Analysis

¶ 12        On appeal, Defendant argues that the trial court erred by (1) denying his MAR because law enforcement's loss of an eyewitness statement was a due process violation under *Brady*, (2) denying his MAR because the State presented false testimony in violation of *Napue*, (3) failing to conduct an evidentiary hearing for his *Brady*, *Napue*, and IAC claims, and (4) barring Defendant from filing any future motions for appropriate relief.  We remand for an evidentiary hearing on the IAC claims.

### A.  Jurisdiction

¶ 13        The State argues we should decline to consider issues one, two, and four, because these issues fall outside the scope of Defendant's petition for writ of certiorari, which was previously granted by this Court.   Our order allowed the writ "for purposes of reviewing the order entered by Judge J. Stanley Carmical on 16 October 2020 in Brunswick County Superior Court denying petitioner's motion for appropriate relief."  Because Defendant's arguments fall within the scope of reviewing Judge Carmical's order, we hold that we have jurisdiction to review them.

### B.  Standard of Review

¶ 14        Where a defendant's MAR has been dismissed without holding an evidentiary hearing, "[w]e review the MAR court's summary dismissal de novo to determine

whether the evidence contained in the record and presented in [Defendant's] MAR—considered in the light most favorable to [Defendant]—would, if ultimately proven true, entitle him to relief." *State v. Allen*, 378 N.C. 286, 296-97, 2021-NCSC-88, ¶24. "If answering this question requires resolution of any factual disputes, N.C.G.S. § 15A-1420(c)(1) requires us to vacate the summary dismissal order and remand to the MAR court to conduct an evidentiary hearing." *Id.* at 297, 2021-NCSC-88, ¶24.

## C. *Brady* Claim

Defendant argues on appeal that the trial court erroneously denied his *Brady* claim. In his MAR, Defendant argued that the State violated his right to due process by suppressing Kashon McCall's original written statement to police, which was lost by the police department and not available at trial. The trial court concluded that Kashon's statement was not material. After careful review, we affirm the trial court's conclusion on Defendant's *Brady* claim.

A criminal defendant's due process rights under the 14th Amendment to the United States Constitution are violated when the prosecution suppresses evidence favorable to the defendant that is "material either to guilt or to punishment[.]" *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Therefore, "[t]o establish a *Brady* violation, a defendant must show (1) that the prosecution suppressed evidence; (2) that the evidence was favorable to the defense; and (3) that the evidence was material to an issue at trial." *State v. McNeil*, 155 N.C. App. 540, 542, 574 S.E.2d 145, 147 (2002)

(citing *Brady*, 373 U.S. at 87). "Favorable" evidence can be impeachment evidence or exculpatory evidence, and evidence is "material" if "there is a reasonable probability of a different result had the evidence been disclosed." *State v. Williams*, 362 N.C. 628, 636, 669 S.E.2d 290, 296 (2008) (internal marks and citations omitted).

¶ 17    Here, even assuming that the first two *Brady* elements are met, the trial court correctly concluded that Kashon's statement was not material. Even without the original statement, we agree with the trial court that "trial counsel was sufficiently able to cross-examine Kashon McCall on the inconsistencies in his statements."

¶ 18    Trial counsel revealed inconsistences in Kashon's testimony during the following cross-examination:

> [Defense counsel]: So, just to clarify, it's your testimony that as soon as you saw the masked gunman you knew it was Jabar Ballard?
>
> [Kashon]:    Yes.
>
> [Defense counsel]: And when the police arrived did you tell the police officers that?
>
> [Kashon]:    No, ma'am, I didn't.
>
> . . .
>
> [Defense counsel]: Do you remember writing the statement?
>
> [Kashon]:    No, I don't remember writing it down, no.
>
> [Defense counsel]: You don't remember writing the statement at all?

[Kashon]:     Yes, I wrote a statement.

. . .

[Defense counsel]:  And do you remember what you wrote in the statement?

[Kashon]:     No, not really, I don't.

[Defense counsel]:  Did you write in the statement that you knew it was Jabar Ballard in the mask?

[Kashon]:     No, ma'am.

[Defense counsel]: You didn't write that in your statement?

[Kashon]:     No, ma'am, I don't remember, actually.

. . .

[Defense counsel]:  And have you had to testify at a prior court proceeding in a matter related to this incident?

[Kashon]:     Yes ma'am, but I don't remember the testimony.

. . .

[Defense counsel]: And do you remember whether you testified at that hearing that the masked man was Jabar Ballard?

[Kashon]:     Yes, I guess, I don't remember anything.

[Defense counsel]: But, you remember today, you know today that it was Jabar Ballard?

[Kashon]:     Yes, ma'am.

. . .

> [Defense counsel]: But you never told anybody that day that it was Jabar Ballard, did you?
>
> [Kashon]: No, ma'am.

¶ 19 Additionally, trial counsel presented R. Smithwick ("Mr. Smithwick") as an impeachment witness. Mr. Smithwick, who represented Defendant during pretrial proceedings, testified that Kashon was unable to identify Defendant as the perpetrator during the probable cause hearing.

¶ 20 Although impeachment with the actual statement could have been more effective than these methods used, this is not the test for materiality. Here, trial counsel was able to effectively cross-examine and impeach Kashon without the original statement, revealing inconsistencies in his testimony to the jury. We do not believe that, had trial counsel instead impeached Kashon with the original statement, there would have been a "reasonable probability of a different result[.]" *Williams*, 362 N.C. at 636, 669 S.E.2d at 296 (internal marks omitted).

¶ 21 Finally, the suppression of the statement was not enough to "undermine confidence in the outcome of the trial." *Williams*, 362 N.C. at 636, 669 S.E.2d at 296 (internal marks and citation omitted). The jury's verdict was not premised solely on Kashon's eyewitness testimony and identification of Defendant as the perpetrator. Kashon's father and Defendant's cousin, Hardy, was also an eyewitness to the crime, and Hardy unwaveringly identified the perpetrator as Defendant both in his

statements to police and at trial.

**D. *Napue* Claim**

¶ 22        Defendant argues that the trial court erroneously denied his *Napue* claim that the State violated his right to due process by presenting evidence the State knew was false. The trial court concluded that "there is no indication that the prosecution knew the testimony was false." After careful review, we affirm the trial court's conclusion on Defendant's *Napue* claim.

¶ 23        A defendant's due process rights are violated when a State witness gives false testimony that the prosecution knew to be false. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). In order to prove a *Napue* violation, a defendant must show that "testimony was in fact false, material, and knowingly and intentionally used by the State to obtain his conviction[.]" *State v. Call*, 349 N.C. 382, 405, 508 S.E.2d 496, 511 (1998) (internal marks and citations omitted). If a defendant meets this burden, he is entitled to a new trial. *Id.*

¶ 24        However, "there is a difference between the knowing presentation of false testimony and knowing that testimony conflicts in some manner. It is for the jury to decide issues of fact when conflicting information is elicited by either party." *State v. Allen*, 360 N.C. 297, 305, 306, 626 S.E.2d 271, 279 (2006) (concluding that "the prosecution did not violate defendant's constitutional rights by submitting conflicting testimony when nothing in the record tends to show the prosecution knew the

testimony was false").

¶ 25        Here, Defendant specifically argues that the State knew Kashon's testimony identifying Defendant as the perpetrator was false because (1) Chief Taylor testified at Defendant's probation revocation hearing that Kashon "never looked at the [perpetrator's] face" and the State had a copy of this testimony, and (2) an assistant district attorney ("ADA") that interviewed Kashon wrote notes indicating that Kashon saw "a man with a 'hunting hoodie' and 'hunting pants,' mask and Vasqueds shoes."

¶ 26        However, even assuming the other *Napue* elements are met, the record does not support Defendant's contention that the State knew Kashon's testimony was false. Although Kashon's trial testimony that he instantly identified Defendant as the robber was inconsistent with Chief Taylor's pre-trial testimony that Kashon never saw his face, "there is a difference between knowing presentation of false testimony and knowing the testimony conflicts in some manner." *Allen*, 360 N.C. at 305, 626 S.E.2d at 279. Moreover, despite indicating that Kashon saw "a man" in the first reference to the perpetrator, the ADA's notes do not support Defendant's contention that the State knew Kashon could not identify Defendant. The ADA's notes from Kashon's interview also refer to the perpetrator as "JB," Defendant's initials, on every reference thereafter. There was simply no record evidence that the State knew or believed Kashon's testimony to be false, and any inconsistencies in Kashon's

identification of Defendant as the perpetrator were elicited during cross-examination, as described above. Merely because inconsistent testimony was presented does not suggest that such testimony was "knowingly and demonstrably false." *State v. Allen*, 360 N.C. at 305, 626 S.E.2d at 279. Therefore, the trial court correctly concluded that there was no evidence the State knew Kashon's testimony was false to support Defendant's *Napue* claim.

**E. Evidentiary Hearing**

Defendant argues that the trial court erred by failing to grant an evidentiary hearing on his *Brady*, *Napue*, and IAC claims because there were unresolved issues of fact requiring an evidentiary hearing. We agree as to the IAC claims but reject Defendant's argument as to the *Brady* and *Napue* claims. Even accepting Defendant's factual allegations as true, he would not be entitled to relief on his *Brady* and *Napue* claims as discussed above.

Evidentiary hearings on motions for appropriate relief are "the general procedure rather than the exception." *State v. Howard*, 247 N.C. App. 193, 207, 783 S.E.2d 786, 796 (2016). An evidentiary hearing is not required where the "motion and supporting and opposing information present only questions of law[,]" however, "[i]f the court cannot rule upon the motion without the hearing of evidence, it must conduct a hearing for the taking of evidence, and must make findings of fact." N.C. Gen. Stat. § 15A-1420(c)(3), (4) (2021). In other words, "an evidentiary hearing is

mandatory unless summary denial of an MAR is proper, or the motion presents a pure question of law." *State v. Howard*, 247 N.C. App. at 207, 783 S.E.2d at 796 (citing *State v. McHone*, 348 N.C. 254, 258, 499 S.E.2d 761, 763 (1998)).

¶ 29    For IAC claims in particular, "[w]here the claim raises potential questions of trial strategy and counsel's impressions, an evidentiary hearing available through a motion for appropriate relief is the procedure to conclusively determine these issues." *State v. Santillan*, 259 N.C. App. 394, 402, 815 S.E.2d 690, 696 (2018) (internal quotation and citation omitted). However, summary denial of a defendant's MAR alleging IAC—without a hearing—may be appropriate where a defendant fails to support IAC claims with any evidence. *State v. Rhue*, 150 N.C. App. 280, 290, 563 S.E.2d 72, 79 (2002) (supporting the trial court's summary denial of Defendant's MAR and rejecting defendant's IAC claim, based partly on his attorney's alleged failure to contact various defense witnesses, where "defendant failed to file *any* affidavits or other evidence to support his assertions that counsel was ineffective") (emphasis added)).

¶ 30    For reasons elaborated below, we hold that the trial court erred by not granting an evidentiary hearing on Defendant's IAC claims.

**F.  Ineffective Assistance of Counsel**

¶ 31    On appeal, as relief, Defendant seeks an evidentiary hearing on his IAC claims, and therefore "the question at this stage is not whether [Defendant] has proven that

he received IAC. Instead, the question is whether he has stated facts which, if proven true, would entitle him to relief." *Allen*, 378 N.C. 286, 299, 2021-NCSC-88, ¶29. We conclude that Defendant is entitled to an evidentiary hearing.

¶ 32     A criminal defendant's right to counsel under the Sixth Amendment to the United States Constitution includes the right to effective assistance of counsel. U.S. Const. amend. VI; *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. To prove ineffective assistance of counsel, the United States Supreme Court created the following two-part test that must be satisfied: (1) "the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) "the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

¶ 33     "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691. It follows that "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices

made after less than complete investigation are reasonable [only] to the extent that reasonable professional judgments support the limitations on investigation." *Wiggins v. Smith*, 539 U.S. 510, 514 (2003) (internal marks and citation omitted). "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 689, 691 ("[T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (internal quotation omitted)).

¶ 34 Decisions regarding "what witnesses to call" and "whether and how to conduct cross-examination" are typically considered strategic choices in the "exclusive province" of the lawyer. *State v. Quick*, 152 N.C. App. 220, 222, 566 S.E.2d 735, 737 (2002). *See also State v. Lowery*, 318 N.C. 54, 68, 347 S.E.2d 729, 739 (1986) ("Trial counsel are necessarily given wide latitude in these matters. Ineffective assistance of counsel claims are not intended to promote judicial second-guessing on questions of strategy as basic as the handling of a witness." (internal marks omitted)). However, whether a defendant's counsel "made a particular strategic decision remains a *question of fact*, and is not something which can be hypothesized." *State v. Todd*, 369 N.C. 707, 712, 799 S.E.2d 834, 838 (2017) (emphasis added) (citation omitted).

¶ 35        Although there are no prior North Carolina cases precisely on point, other courts have concluded that an attorney's representation was deficient for failing to contact and interview prospective alibi witnesses. *See, e.g., Griffin v. Warden, MD. Correctional Adjustment Ctr.*, 970 F.2d 1355, 1358 (4th Cir. 1992) ("[Counsel] did not even talk to [the prospective alibi witness], let alone make some strategic decision not to call him."); *Grooms v. Solem*, 923 F.2d 88, 90, 91 (8th Cir. 1991) ("[I]t is unreasonable not to make some effort to contact [alibi witnesses] to ascertain whether their testimony would aid the defense[,]" and "[p]rejudice can be shown by demonstrating that the uncalled alibi witnesses would have testified if called at trial and that their testimony would have supported [Defendant's] alibi."); *Clinkscale v. Carter*, 375 F.3d 430, 445 (6th Cir. 2004) ("The fact that none of these individuals could provide any corroboration for this alleged alibi certainly must have significantly affected the jury's assessment of [Defendant's] guilt. Had even one alibi witness been permitted to testify on [Defendant's] behalf, [Defendant's] own testimony would have appeared more credible . . ."); *Bryant v. Scott*, 28 F.3d 1411, 1417 (5th Cir. 1994) ("[Counsel's] failure to investigate potential alibi witnesses was not a 'strategic choice' that precludes claims of ineffective assistance.").

¶ 36        Because of the significance of a criminal defendant's alibi defense, we are persuaded that a trial counsel's failure to investigate known alibi witnesses can constitute deficient performance. Therefore, we focus our analysis primarily on

Defendant's IAC argument regarding counsel's investigation of alibi witnesses.

In her affidavit, which was attached as an exhibit to Defendant's MAR, trial counsel testified as follows regarding her handling of Defendant's alibi witnesses and defense:

> 10. During the course of my representation prior to trial, I interviewed Toye Baker, Tiye Cheatham, and Vashaun (Kyheim) Cheatham. . . .
>
> 11. I did not look for the progress report to determine if it existed and / or corroborated Tiye's alibi for Jabar. . . .
>
> 12. I filed a notice of alibi on August 4, 2011. . . .
>
> 13. On August 30, 2011, I e-mailed the prosecutor, Gina Essey, to inform her of Mr. Ballard's potential alibi witnesses: Toye Baker, Tiye Cheetham (sic), Kyheem Cheetham (sic), Khalies (sic) Ballard, and Jauhar Ballard. . . .
>
> 14. I did not present any alibi witnesses at Mr. Ballard's trial.
>
> 15. I do not recall whether I interviewed Khalief Ballard.
>
> . . .
>
> 20. Shortly before trial, I received additional discovery from the State consisting of Mr. Ballard's recorded telephone conversations from jail. I believed and I told the Court that I had a right to hear those recordings so that I could prepare a defense. I thought there could be things in those recordings that could exonerate Mr. Ballard. I did not know if Mr. Ballard discussed his alibi in those recordings.

¶ 38    Regarding counsel's allegedly deficient investigation into Defendant's alibi, there is a significant omission from the Order that the State fails to address on appeal: potential alibi witness, Khalief Ballard, corroborated Defendant's alibi and claimed to have been with him the morning of the crime. Defendant now claims that Khalief, Defendant's son, was never contacted or interviewed by trial counsel prior to trial. In her affidavit, trial counsel states that she "do[es] not recall" whether she interviewed Khalief, although she concedes he was not on her witness list. In his sworn statement, Khalief claims that he "was never contacted or interviewed" by trial counsel about his father's case. Moreover, nothing in the record indicates why counsel may have chosen not to interview Khalief, and, in fact, we do not know whether trial counsel interviewed him at all. Because whether a defendant's counsel "made a particular strategic decision remains a *question of fact*, and is not something which can be hypothesized[,]" *Todd*, 369 N.C. at 712, 799 S.E.2d at 838 (emphasis added), we cannot say with certainty whether counsel strategically decided not to investigate Khalief as an alibi witness, and this factual issue can only be appropriately resolved at an evidentiary hearing. *See also Allen*, 378 N.C. at 300, 2021-NCSC-88, ¶ 32 ("[T]he court is not at liberty to invent for counsel a strategic justification which counsel does not offer and which the record does not disclose.").

¶ 39    Therefore, applying *Strickland*, Defendant has sufficiently alleged a factual dispute regarding his alibi defense that, if ultimately proven true, would support his

contention that counsel's failure to investigate Khalief as an alibi witness was deficient and prejudiced the outcome of the trial. He is entitled, at a minimum, to an evidentiary hearing on his IAC claims. We therefore vacate and remand the Order of the trial court, with instruction to hold an evidentiary hearing on the IAC claims. Because we conclude that the trial court erred in summarily denying one of Defendant's IAC claims, "we need not address his other claims here without the benefit of a more fully developed factual record." *Allen*, 378 N.C. at 303, 2021-NCSC-88, ¶40.

## G. Gatekeeper Order

¶ 40        In the Order, the trial court concluded that "pursuant to N.C.G.S. § 15A-1419(a), Defendant's failure to assert any other grounds in this Motion shall be treated in the future as a **BAR** to any other motions for appropriate relief that he might hereafter file in this case." However, we have previously held that this statute does not allow trial courts to enter "gatekeeper" orders that preclude defendants from filing any future MAR, because "the determination regarding the merits of any future MAR must be decided based upon that motion. Gatekeeper orders are normally entered only where a defendant has previously asserted numerous frivolous claims." *State v. Blake*, 275 N.C. App. 699, 714, 853 S.E.2d 838, 848 (2020) (citations omitted). Because this is not a case where Defendant "has filed many frivolous MARs asserting the same claims[,]" *id.*, we therefore vacate the erroneous gatekeeper portion of the

trial court's Order.

## III.  Conclusion

For the foregoing reasons, we affirm the *Brady* and *Napue* portions of the Order, vacate the gatekeeper and IAC portions of the Order, and remand for the trial court to conduct an evidentiary hearing on Defendant's IAC claims.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

Judge MURPHY concurs with the exception of paragraph 35.

Judge GRIFFIN concurs by separate opinion.

GRIFFIN, Judge, concurring.

While I concur in the result reached in the case before us, this is, in part, based solely upon this Court's adherence to North Carolina Supreme Court precedent. I write separately to express my concerns with our Supreme Court's precedent binding this Court to hold that Defendant is entitled to an evidentiary hearing on his IAC claim.

The standard employed by the majority effectively guarantees any defendant an MAR evidentiary hearing when the defendant merely alleges "facts which, if proven true, would entitle him to relief." *State v. Allen*, 378 N.C. 286, 2021-NCSC-88, ¶ 29. The novel precedent set out in *Allen* requires this Court to review Defendant's MAR "in the light most favorable to [Defendant]" and "to vacate the summary dismissal order and remand to the MAR court to conduct an evidentiary hearing" if any factual disputes arise. *Id.* ¶ 24. I acknowledge the reliance on *Allen* in utilizing this standard. However, the standard utilized in *Allen* is not supported anywhere in the North Carolina General Statutes or North Carolina caselaw. Our legislature, in writing this unambiguous statute, provided MAR defendants with sufficient protections as the statute is written.

The holding in *Allen* allows a petitioning party to take away the gatekeeping function of the trial judge. This results in meritless hearings that will deplete the resources of our trial courts by simply alleging a disputed fact, regardless of its legitimacy. Certainly, our Supreme Court thought about the practical implications

of flooding our trial courts by applying this new standard for evidentiary hearings. *See id.* ¶ 78 (Berger, J., dissenting) ("The majority opinion, however, strips trial court judges of this important gatekeeping function. As a result, trial courts will now be forced to spend precious time and resources conducting evidentiary hearings on meritless post-conviction motions.") This position clearly frustrates the plain language of the statute, takes away discretion from our trial judges, and shows a need for our Supreme Court to revisit its holding.

¶ 45 Requiring an evidentiary hearing in this instance runs counter to the plain language of N.C. Gen. Stat. § 15A-1420(c), which states:

> (1) Any party is entitled to a hearing on questions of law or fact arising from the motion and any supporting or opposing information presented unless the court determines that the motion is without merit. The court must determine, on the basis of these materials and the requirements of this subsection, whether an evidentiary hearing is required to resolve questions of fact. Upon the motion of either party, the judge may direct the attorneys for the parties to appear before him for a conference on any prehearing matter in the case.
>
> (2) An evidentiary hearing is not required when the motion is made in the trial court pursuant to G.S. 15A-1414, but the court may hold an evidentiary hearing if it is appropriate to resolve questions of fact.
>
> (3) The court must determine the motion without an evidentiary hearing when the motion and supporting and opposing information present only questions of law. The defendant has no right to be present at such a hearing where only questions of law are to be argued.

(4) If the court cannot rule upon the motion without the hearing of evidence, it must conduct a hearing for the taking of evidence, and must make findings of fact. The defendant has a right to be present at the evidentiary hearing and to be represented by counsel. A waiver of the right to be present must be in writing.

(5) If an evidentiary hearing is held, the moving party has the burden of proving by a preponderance of the evidence every fact essential to support the motion.

(6) A defendant who seeks relief by motion for appropriate relief must show the existence of the asserted ground for relief. Relief must be denied unless prejudice appears, in accordance with G.S. 15A-1443.

(7) The court must rule upon the motion and enter its order accordingly. When the motion is based upon an asserted violation of the rights of the defendant under the Constitution or laws or treaties of the United States, the court must make and enter conclusions of law and a statement of the reasons for its determination to the extent required, when taken with other records and transcripts in the case, to indicate whether the defendant has had a full and fair hearing on the merits of the grounds so asserted.

N.C. Gen. Stat. § 15A-1420(c) (2019). The official commentary of this section provides for two types of hearings: "One is the hearing based upon affidavits, transcripts, or the like, plus matters within the judge's knowledge, to comply with the parties' entitlement to a hearing on questions of law and fact. The other is an evidentiary hearing." N.C. Gen. Stat. § 15A-1420, Off. Comment. (2019).

¶ 46      Based on the plain language of the statute and its official commentary, the trial court is permitted discretion to determine whether an evidentiary hearing is required. *See id.* § 15A-1420(c)(1). Additionally, even when questions of fact are presented to the trial court or a motion has merit, it is clear that an evidentiary hearing is not necessarily required by the statute. Instead, the trial court has been given clear authority in the statute to exercise discretion. If the motion presents a factual dispute, the trial court may conduct a "hearing based upon affidavits, transcripts, or the like, plus matters within the judge's knowledge, to comply with the parties' entitlement to a hearing on questions of law and fact[,]" unless, "the court cannot rule upon the motion without the hearing of evidence[.]" *Id.* §§ 15A-1420(c)(1), (4), and Off. Comment. However, the statute clearly leaves open the possibility for the trial court to resolve the motion without a hearing if the trial court determines it is not necessary. *See State v. Camp,* 286 N.C. 148, 152, 209 S.E.2d 754, 756 (1974) ("Where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must give [the statute] its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein." (citation and internal quotation marks omitted)).

¶ 47      Here, the trial court determined that it could decide the matter without an evidentiary hearing. The trial court was provided with an extensive record from the trial and post-conviction proceedings. The submissions before the judge included an

affidavit from the defense counsel and the alleged alibi witness. The trial judge had sufficient information to decide the IAC claim and, in his discretion, determined the MAR could be resolved without an evidentiary hearing. The trial court's order stated that "Defendant's . . . assertions within his ineffective assistance of counsel claim were strategic decisions regarding witnesses made by Defendant's trial counsel" and therefore "Defendant's first claim . . . that he received ineffective assistance of counsel, is without merit." Since there were no factual disputes requiring a hearing and the trial court found no merit to Defendant's IAC claim, the trial court, within its authority, summarily resolved the claims in its order.

While I disagree with the *Allen* standard regarding the evidentiary hearing, I recognize that this Court is bound by our Supreme Court's precedent. *See Dunn v. Pate*, 334 N.C. 115, 118, 431 S.E.2d 178, 180 (1993) ("[T]he Court of Appeals . . . has no authority to overrule decisions of [the] Supreme Court and [has] the responsibility to follow those decisions until otherwise ordered by the Supreme Court." (citations and internal quotation marks omitted)). Accordingly, I concur in the majority opinion.